ROBERT E. FARRAR, *Administrator, etc., et al.*

*v.*

MILDRED YOUNG, *Administratrix, etc.*

(No. 13634)

*and*

MILDRED YOUNG, *Administratrix, etc.*

*v.*

ROBERT E. FARRAR, *Administrator, etc., et al.*

(No. 13635)

Decided November 23, 1976.

854

*Billy E. Burkett and Randall L. Veneri* for Farrar, et al.

*John P. Anderson* for Mildred Young.

CAPLAN, JUSTICE:

This case, on appeal from a final order of the Circuit Court of Mercer County entered on February 10, 1975, involves a civil action instituted in that court by Mildred Young, in her individual capacity and as Administratrix of the Estate of R. S. Farrar, deceased, against Robert E. Farrar, Administrator of the Estate of R. S. Farrar and in his individual capacity and Charles E. Farrar. After a trial before the court without a jury, the court made certain findings and entered an order, part of which favored the plaintiff and part of which was favorable to the defendants. Both the plaintiff and the defendants appeal.

Mildred Young, Robert E. Farrar and Charles E. Farrar are the children of R. S. Farrar who died intestate on July 26, 1972. The settlement of his estate resulted in this family squabble, prompting this litigation and these appeals.

In her civil action Mildred Young sought an accounting and a recovery of monies paid by Mercer Crushed Stone, Inc. to her brothers. Mercer Crushed Stone operated a quarry on the Farrar lands under a lease with the Farrar brothers. That corporation is not a party to this appeal but it did answer the complaint, therein acknowledging the existence of the lease and its performance thereunder.

Reflecting the position of the plaintiff are the following allegations in her complaint. She asserts that under the terms of an agreement dated April 22, 1965, she and her brothers, in consideration of the conveyance of certain lands, agreed to make certain royalty payments to their father, R. S. Farrar, for the removal of rock, limestone and other minerals from lands owned by said R. S. Farrar. That agreement is contained in the record as an exhibit, the pertinent part of which reads as follows:

> "4. In the event any of the *minerals, limestone, rocks, coal, oil* or *gas* are removed and/or sold off of the above described farm during the lifetime of the said R. S. Farrar, the proceeds of the sale of said minerals, limestone, etc. shall be divided as follows:
> "(a) The first Ten Thousand ($10,000.00) Dollars received from such sales, in any one year, shall be paid to the said R. S. Farrar, and all money in excess of $10,000.00, in any one year, shall be divided equally between R. S. Farrar, Charles E. Farrar, Robert E. Farrar and Mildred Farrar Young.
> "(b) On the death of the said R. S. Farrar, the proceeds from the sale of said minerals shall be divided equally between Charles E. Farrar, Robert E. Farrar and Mildred Farrar Young, their heirs or assigns."

The plaintiff notes in her complaint that R. S. Farrar, on February 8, 1969, executed in favor of his sons, C. E. Farrar and R. E. Farrar, a release of certain conditions contained in the aforesaid agreement but specifically

retained and excluded from that release the above quoted royalty payment clause, designated 4(a).

It is further asserted by the plaintiff that no royalty payments provided for in the above agreement were made by her brothers to R. S. Farrar during his lifetime; that she has no knowledge as to when Mercer Crushed Stone commenced operation of the quarry; and that she has requested an accounting of the operation from her brothers and from the operator of the quarry but has received no information from either of them. Expressing her belief that royalty payments are due and owing the estate of R. S. Farrar, she demands that Robert E. Farrar or Charles E. Farrar or both and Mercer Crushed Stone, Inc. be required to make an accounting of all the monies paid by the latter to her brothers under the lease and that all monies due R. S. Farrar under the agreement of April 22, 1965 be paid to the estate. She also seeks recovery of attorneys fees.

Responding to the complaint, Robert E. Farrar and Charles E. Farrar filed an answer and counterclaim. In their answer, the defendants, while admitting the existence of the April 22, 1965 agreement, deny that R. S. Farrar was the owner, taking the position that he owned only a one-third undivided interest in such property. Furthermore, they deny that the release executed by R. S. Farrar, alluded to in the complaint, was valid or effective, since they did not sign it.

In addition, answer the defendants, two certain deeds, dated May 12, 1965, wherein Robert E. Farrar and Charles E. Farrar were each a grantee of the subject real estate, which deeds conveyed to the defendants "with covenant of General Warranty of Title and free of all liens and encumbrances," superceded and nullified the agreement of April 22, 1965. They took the position, therefore, that neither the plaintiff nor R. S. Farrar was entitled to any royalty payments nor to the demanded accounting.

In their counterclaim the defendants allege that in July, 1970 R. S. Farrar became incapacitated and went to live with the plaintiff where he resided until his death on July 26, 1972. They assert that at the "instance and demand" of the plaintiff, R. S. Farrar closed out his checking and savings account at the Princeton Bank & Trust Company and opened other checking and savings accounts in other banks jointly with the plaintiff, "so that all the money in those accounts went to the Plaintiff on his death." They further allege that a substantial number of shares of stock in the Princeton Bank & Trust Company were given to the plaintiff by her father, R. S. Farrar; that a considerable amount of real and personal property of R. S. Farrar was sold, the proceeds thereof remaining unaccounted for; that the sum of $2,600.00 received by her father in social security payments has not been accounted for; that she had received an advance of $1,000.00 which should be deducted from her share of the subject estate; that R. S. Farrar was mentally incompetent during the period in which he resided in his daughter's home; and, that, although they had requested an accounting of these various funds no such accounting was ever made.

Based upon its findings of fact and conclusions of law, after lengthy hearings, the court, by its order dated February 10, 1975, adjudged and decreed that: (1) The agreement of April 22, 1965, entered into between R. S. Farrar and his children, R. E. Farrar, C. E. Farrar and Mildred Young, is enforceable and binding with respect to the royalty clauses contained in Paragraphs 4(a) and 4(b) thereof, such payments to be subject to reasonable and necessary expenses; (2) that Mercer Crushed Stone, Inc. make an accounting of all royalty payments made to or on behalf of the plaintiff's brothers from the date of the commencement of the payment of royalties until the date of the death of R. S. Farrar and the amounts so reported shall be made a part of and included in the estate of R. S. Farrar; also, the defendants shall place in escrow, pending the final disposition of this proceeding, an amount equal to one-third of the royalty payments

received by them from Mercer after the death of their father; (3) the $1,000.00 advance made by R. S. Farrar to Mildred Young shall be considered as a $1,000.00 advance against the plaintiff's share of said estate; (4) the balance in the savings account in the joint names of R. S. Farrar or Mildred Young, in the amount of $4,798.05, at the Bank of Tazewell shall be included in the R. S. Farrar estate; (5) R. S. Farrar was not incompetent at any time prior to his death and all of his transactions referred to in this order are valid and shall not be set aside; and (6) neither party to this proceeding shall be permitted to charge or claim attorney's fees against the R. S. Farrar estate.

The plaintiff and defendants filed objections to the order of the court, such objections giving rise to the following questions on this appeal. (1) Whether the court erred in holding that the agreement dated April 22, 1965 was enforceable and binding with respect to the royalty clauses contained in Paragraphs 4(a) and 4(b) thereof; (2) whether the court erred in holding that the joint savings account shall be included in the R. S. Farrar estate; (3) whether the court erred in denying payment of attorneys' fees from the estate; and, (4) whether the court erred in its allowance of expenses to the defendants.

In arriving at a decision on the binding effect and enforceability of the royalty clauses of the April 22, 1965 agreement it is necessary to consider the provisions thereof and those of the deeds dated May 12, 1965, together with certain Code provisions quoted below. The defendants rely entirely on the language contained in the deeds whereby the conveyances were made to them "with covenant of General Warranty of Title and free of all liens and encumbrances." They say that the agreement was thereby merged into the deeds and is no longer of any force or effect.

While such a clause as that quoted above will protect a bona fide purchaser of real estate against all the world, the defendants are not in the position of bona fide pur-

chasers, they having had full notice of the agreement and the encumbrances imposed thereby.

Under the terms of the agreement of April 22, 1965, the defendants and the plaintiff (parties of the first part) "in consideration of the conveyance of certain real estate situate in Beaver Pond District, Mercer County, West Virginia, from the party of the second part [R. S. Farrar] to the parties of the first part," agreed, among other things, to the payment of the royalties reflected in the heretofore quoted Paragraph 4 of said agreement.

By deed dated May 12, 1965, R. S. Farrar, Mildred Young and Charles E. Farrar conveyed to Robert E. Farrar their interest in 194 acres of land in Beaver Pond District. By another deed of the same date R. S. Farrar, Mildred Young and Robert E. Farrar conveyed to Charles E. Farrar their interest in a separate 194 acre tract of land in the same district of Mercer County. If these grantees had been purchasers for value without notice of the royalty agreement, it not then having been placed on record, they would have taken such land free of the encumbrances imposed by such agreement. However, all were parties to the agreement so necessarily had notice thereof.

*W. Va. Code*, 40-1-8, *as amended*, provides, where pertinent:

> "Any contract in writing ... made for the conveyance or sale of real estate, or an interest or term therein of more than five years, or any other interest or term therein, of any duration, under which the whole or any part of the corpus of the estate may be taken, destroyed, or consumed, shall, from the time it is duly admitted to record, be, as against creditors and purchasers, as valid as if the contract were a deed conveying the estate or interest embraced in the contract."

The subject agreement and the deeds upon which the defendants rely relate to the same land, that is, the Farrar farm on Beaver Pond District in Mercer County. The agreement contemplates the taking of a part of the corpus of the estate. Therefore, this agreement is a con-

tract within the contemplation of the above statute and, as against purchasers with notice thereof, is as effective as a recorded deed. It is reflected by the record that the agreement was not recorded until after the deeds of May 12, 1965 were executed, delivered and recorded. In relation to the protection afforded by the timely recording of a contract or deed, *W. Va. Code,* 40-1-9, *as amended,* provides:

> "Every such contract, every deed conveying any such estate * * * shall be void, as to creditors, and subsequent purchasers for valuable consideration *without notice,* until and except from the time that it is duly admitted to record ... " (Emphasis supplied).

In the instant case all of the involved parties were parties to the agreement and the deeds alluded to above. When the Farrar brothers took as grantees under the separate deeds of May 12, 1965 they took with full knowledge of the existence of the agreement containing the subject royalty provisions. Therefore, although the deeds were executed, delivered and recorded prior to the recordation of the agreement, they were not purchasers for value *without notice* and were not protected by *W. Va. Code,* 40-1-9 the recordation statute.

Of further substance in holding that the deeds were subject to the royalty provisions of the agreement is the fact that the language of the deeds did not cancel or in any manner even refer to the agreement. The same parties having been involved in both instruments, it would have been a simple matter to have included language cancelling the former agreement. Furthermore, by the terms of a release dated February 8, 1969 and executed by R. S. Farrar in favor of R. E. and C. E. Farrar, R. S. Farrar released certain tracts of land described in the agreement of April 22, 1965 and certain conditions therein, but expressly retained and kept in full force and effect Paragraph 4(a) relating to the payment of royalties. This release was accepted by his two sons, the defendants herein, and was duly recorded on February 13, 1969. The defendants' contention that this release is not

effective as to them because they did not sign it is without merit.

Under the circumstances of this case, as revealed by the record, and by reason of the statutes cited and quoted above, we are of the opinion that the ruling of the trial court, holding that the April 22, 1965 agreement, relating to royalty payments, was binding and enforceable against these defendants, was correct. The judgment of the trial court will be affirmed on that issue.

In so ruling we are not unmindful of the assertion expressed in No. 2 of the defendants' assignments of error. Therein it was contended that since the plaintiff sought no affirmative relief in her complaint as to paragraph 4(b) of the subject agreement, the court erred in affording relief under that provision.

Although in her complaint the plaintiff specified only 4(a) of the agreement in her demand for an accounting and recovery, it is clear from a reading of the entire complaint that she was asserting a claim and seeking relief under both clauses of paragraph 4. She alleged that she reserved "her interest in the mineral rights as contained in the royalty agreement"; she asserted that she had sought an accounting from her brothers and Mercer Crushed Stone, Inc., as administratrix of the estate and "as an individual"; and, she included as an exhibit to the complaint a copy of the agreement in its entirety. Furthermore, the pleadings of the defendants made it clear that they knew the extent of the plaintiff's demands and were in no manner surprised by the evidence adduced on her behalf. The court correctly determined in this proceeding all of the matters before it on this issue. Concisely stated, the pleadings, when read and considered as a whole, laid a proper foundation for the judgment; the relief was consistent with the pleadings. *See, Mullins v. Green*, 145 W. Va. 469, 115 S.E.2d 320 (1960); *Cecil v. Knapp*, 143 W. Va. 896, 105 S.E.2d 569 (1958); *Cato v. Silling*, 137 W. Va. 694, 73 S.E.2d 731

(1952); *Waldron v. Harvey,* 54 W. Va. 608, 46 S.E. 603 (1904); and 11 M.J. *Judgments and Decrees,* §25.

The plaintiff here complains that the trial court erred in holding that the balance in the savings account in the joint names of R. S. Farrar or Mildred Young in the amount of $4,798.05, at the Bank of Tazewell, as of the date of the death of R. S. Farrar, shall be included in the estate of R. S. Farrar. On this issue we are in agreement with the plaintiff and the order of the circuit court to that extent is reversed.

In the instant case the undisputed evidence of Barbara French, a teller at the Bank of Tazewell who handled Mr. Farrar's account, and that of Mildred Young, also undisputed, conclusively establishes that R. S. Farrar fully intended to create a joint account to which his daughter, the plaintiff, had equal access. The court made a finding, uncontested here, that R. S. Farrar was competent. There was no allegation of fraud or mistake in the creation of this joint account.

Dispositive of this issue is a decision of this Court in *Dorsey v. Short,* 157 W. Va. 866, 205 S.E.2d 687 (1974), Point 2 of the Syllabus of which reads:

> "*W. Va. Code,* 1931, 31A-4-33 as amended, creates, in the absence of fraud, mistake or other equally serious fault, a conclusive presumption that the donor depositor of a joint and survivorship bank account intended a causa mortis gift of the proceeds remaining in the account after his death to the surviving joint tenant."

*In accord: Wilkes v. Summerfield,* ____ W. Va. ____, 212 S.E.2d 316 (1975); *Lett v. Twentieth Street Bank,* 138 W. Va. 759, 77 S.E.2d 813 (1953).

The next assignment of error relates to the court's refusal to allow attorneys' fees to either party as charges against the estate of R. S. Farrar. Both parties assign as error this ruling of the trial court. The standard by which a court should be guided in allowing or disallowing attorneys' fees as a charge against an estate

is whether the legal services rendered were designed to capture assets for the estate or were otherwise necessary to the settlement thereof.

The Syllabus in *Beuter v. Beuter*, 122 W. Va. 103, 7 S.E.2d 505 (1940); which is quoted as Syllabus Point 2 in *Security National Bank & Trust Co. v. Willim*, 153 W. Va. 299, 168 S.E.2d 555 (1969), succinctly states the above maxim in the following language:

> "In the absence of a valid contract of employment an allowance of fees to an attorney, payable out of the estate of a decedent, can only be justified upon a showing of services beneficial to the estate, or necessary to its settlement, as distinguished from services performed for a client presenting a claim against the estate."

*See*, 8 M.J. *Executors and Administrators*, §93; 31 Am. Jur. 2d *Executors and Administrators*, §166.

In the case under consideration the plaintiff, Mildred Young, instituted this suit, not only in her individual capacity but also as the administratrix of the estate of R. S. Farrar. In the latter capacity she sought the recovery of monies for the estate. In this respect the services rendered by counsel were designed to benefit the estate and, under the principles expressed in *Beuter*, *Willim* and the other authorities cited above, reasonable attorneys' fees therefore are properly chargeable to the estate. In considering the reasonableness thereof it is pertinent to note that counsel also represented Mrs. Young in her individual capacity as an adversary against the defendants. The ruling of the trial court is, therefore, reversed on this issue and reasonable attorneys' fees, chargeable to the estate, shall be allowed to the plaintiff.

Applying the principles of *Beuter* and *Willim* we arrive at the same conclusion relative to attorneys' fees for services rendered to the defendant, Robert E. Farrar. He was sued, not only in his individual capacity but also as a co-administrator of the estate. Furthermore, in the

latter capacity, he filed a counterclaim against Mrs. Young, seeking restoration of certain funds to the estate. Therefore, to the extent that the services rendered were designed to benefit the estate reasonable legal fees shall be allowed to the defendant, Robert E. Farrar.

In relation to the final assignment of error concerning the allowance of expenses to the defendant, the Court has carefully considered the record and has concluded that it will not disturb the findings of the trial court.

For the reasons stated herein the final order of the Circuit Court of Mercer County is affirmed in part and reversed in part and the case is remanded for proceedings, consistent with this opinion.

*Affirmed in part,
reversed in part and
remanded.*