ESTATE OF HELEN N. HOBBS, *dec'd., etc.*

*v.*

DAVID C. HARDESTY *as tax commr., etc.*

(No. 14850)

Decided June 23, 1981.

*Chauncey H. Browning*, Attorney General, *C. Page Hamrick, III*, Special Assistant Attorney General, for appellant.

*Jordan & Wilson, Ronald E. Wilson and Edwin Jeffrey Adams* for appellee.

NEELY, JUSTICE:

This is an estate tax appeal by the State Tax Commissioner from the Circuit Court of Hancock County. There are two issues upon which we must pass. The first is whether the entire federal estate tax levied upon the estate of Helen N. Hobbs should be credited against the West Virginia inheritance tax notwithstanding that part of the federal tax was attributable to property not subject to West Virginia inheritance tax. On this issue we agree with the tax commissioner, apportion the estate tax credit, and

reverse the circuit court. The second issue is whether a person who is a joint tenant with right of survivorship with a decedent in a bank account must pay inheritance tax on the entire amount in the account although she conclusively demonstrates that she was only a trustee and actually paid the money from the account to the other heirs. On this question we hold against the tax commissioner and in favor of the executor, and we affirm the circuit court.

Helen N. Hobbs died testate, a resident of Hancock County, West Virginia, on 20 October 1974. Under her will her beneficiaries were Wilbert F. Hobbs, Jr., a son, Ann Hobbs, a daughter, Mary H. Walker, a daughter, and Richard L. Hobbs, a son. For federal estate tax purposes, the Hobbs' gross estate totalled $286,478.70 and included land located outside of West Virginia valued at $82,000 and insurance payable to beneficiaries of $81,412.86, neither of which was subject to the West Virginia inheritance and transfer tax. For West Virginia inheritance tax purposes the gross estate totalled $123,647.13. The estate paid a federal estate tax of $55,386.12 upon the gross estate, and in calculating the West Virginia inheritance and transfer tax, the full amount of the federal estate tax was deducted before computing the West Virginia inheritance taxes.

## I

The executor maintained both before the tax commissioner and the circuit court that the general provision in the will which required the executor to pay the estate and inheritance taxes caused the entire federal estate tax to be a deduction against the West Virginia inheritance tax because the executor was a West Virginia executor charged with the payment of taxes. The pertinent part of the Hobbs will concerning payment of taxes is as follows:

> FIRST: I direct that all my just debts, funeral expenses of my last illness and all the expenses of the settlement of my estate, including any taxes which may be assessed by the Federal or State Government, be paid out of my estate by my Executor as soon as conveniently may be done after my decease.

The executor argues that this paragraph makes the entire tax burden a charge upon the residuary estate and that, since all taxes, both state and federal, will be paid from a fund of property located in West Virginia, that the entire federal estate tax should be a credit against the state inheritance tax. We do not cavil with the executor's understanding of the general law. If, indeed, all taxes due and owing on an estate must be paid by funds of that estate located and taxable in West Virginia, then the entire amount of the federal estate tax is credited as a deduction against the West Virginia inheritance tax.

However, in the case before us the will does not provide that both state and federal taxes must be paid from the West Virginia estate. The real question is whether the will provides that a specific West Virginia fund, as for example, the residuary estate if that residuary were composed exclusively of West Virginia property, be charged with the payment of all taxes so that certain specific bequests and devises could be made in a net amount. That was not the structure of Mrs. Hobbs' will. Mrs. Hobbs' will provided only that all of her property went to her husband if he were alive and that if he were dead all of her property should be divided equally, share and share alike, among her four children. Consequently, the children took equal interests in both the West Virginia and non-West Virginia property and the executor was required to apportion the tax burden among the beneficiaries in direct proportion to the amount of property which each took. Absent specific direction in a will with regard to the property from which taxes should be paid, *W. Va. Code*, 44-2-16a [1959] provides for the apportionment of federal estate taxes and for the fiduciary to deduct the taxes from the shares of the beneficiaries. The direction to the executor to pay funeral expenses, just debts, and taxes was entirely unnecessary since the law requires the executor to do all of those things.

The question, of course, which immediately springs to mind is what happens to the federal estate tax attributable to property outside of West Virginia; does that federal estate tax then evaporate and disappear into the ether to be useless as a credit against the state taxes? The answer,

at least with regard to property located in Ohio, is "no." The Ohio tax law, as set forth in *Ohio Revised Code*, §§ 5731.18 to 5731.19 provides that the estate tax levied upon the transfer of estates of non-resident decedents is computed by first finding the amount of federal credit allowable as if the decedent were a resident with all of his property in Ohio. This figure is then multiplied by a fraction, the numerator of which is the value of the real property in Ohio, tangible personal property in Ohio, and intangible personal property employed in carrying a business in Ohio, if not exempted from taxes under the reciprocal exemption provision, and the denominator of which is the value of the gross estate wherever situated. This figure is then credited with the amount of Ohio inheritance taxes of the non-resident.

Consequently, we see that Ohio allows credits towards the Ohio estate tax pursuant to the same formula which the state tax commissioner has adopted in his *Rules and Regulations for the Inheritance and Transfer Tax Division*, §§ 2.01 through 2.03. These regulations in turn interpret *W. Va. Code*, 11-11-1 [1976] which is the general statute imposing inheritance taxes and *W. Va. Code*, 11-11-5 [1957] which provides:

> The market value of property is its actual market value after deducting debts and encumbrances for which the same is liable, and to the payment of which it shall actually be subjected. . . .

It is under this last quoted *Code* section that the federal estate tax becomes a deduction for state inheritance tax purposes; however, it should be obvious that in the case before us property located in West Virginia was not subject to the debt or encumbrance of the entire federal estate tax, but only of that part of the federal estate tax attributable to property located in West Virginia.

Since there appears to be some perfectly justifiable confusion at the bar concerning what needs to be done in a will to entitle an estate to a full credit for federal estate taxes against the West Virginia inheritance tax a little additional comment on that subject might be in order. A general provision in a will requiring an executor to pay

state and federal taxes is entirely nugatory; it does nothing but restate one of the primary legal obligations of an executor. When, however, a specific fund is created under the will for the payment of state and federal taxes, and the executor is directed to pay taxes from that fund only (to the extent that it is sufficient) then if certain other conditions are met it will be possible to deduct the entire federal estate tax before computing the West Virginia inheritance taxes which are payable. Under that set of facts, the requirement of *W. Va. Code,* 11-11-5 [1957] is met because the entire estate tax encumbers the market value of a specific fund of West Virginia property.

All of this discussion, of course, is entirely irrelevant to an estate where all of the property is subject to West Virginia inheritance tax. It is only where part of the property is located in West Virginia and part is located elsewhere and not subject to West Virginia tax that this problem arises.

Where an executor is directed to pay federal estate taxes from a fund of property located and taxable in West Virginia, then the entire federal estate tax can be credited as a deduction for West Virginia inheritance tax purposes. The statutory grounds upon which the commissioner has interpreted the taxing structure in this fashion is that part of *W. Va. Code,* 11-11-5 [1957] which provides:

> In fixing such market value, allowances shall not be made for debts incurred by the decedent, or encumbrances made by him, unless such debts or encumbrances were incurred or created in good faith for an adequate consideration, nor *for any debt in respect whereof there is a right to reimbursement from any other estate or person, unless such reimbursement from any other estate or person cannot be obtained.* (emphasis supplied)

The theory is that where a West Virginia executor pays federal estate taxes attributable to property located in Ohio, the West Virginia executor has a statutory right to reimbursement from the recipient of the Ohio property for the *pro rata* share of the estate taxes attributable to the

Ohio property. The commissioner accepts, by the way, that where such reimbursement cannot be obtained, the executor may deduct the entire federal estate tax, but that case is not before us.

Consequently, we hold that the Circuit Court of Hancock County erred in concluding that the federal estate tax attributable to property located in Ohio and not subject to West Virginia inheritance tax is a proper deduction in the computation of West Virginia inheritance tax.

## II

During her lifetime the decedent established a savings account in the Hancock County Federal Savings and Loan Association which contained $67,415.26 at her death in the names of Helen N. Hobbs or A. Ann Hobbs as joint tenants with the right of survivorship. In filing the West Virginia inheritance tax return the estate divided that sum among the four beneficiaries under the will and each beneficiary in turn was entitled to his or her $2,500 exemption provided by *W. Va. Code*, 11-11-1(d). The tax commissioner assessed and taxed the entire sum in the joint account to A. Ann Hobbs, but the circuit court held against the tax commissioner and in favor of the estate. A. Ann Hobbs executed an affidavit which provided as follows:

> The deposit in Hancock County Federal Savings & Loan Association of Chester, West Virginia in the names of Helen N. Hobbs or A. Ann Hobbs in a joint survivorship account was not money to which I was entitled. The money placed in the account was placed by my mother, Helen N. Hobbs, and I was listed on the account as a matter of convenience in case my ailing mother could not get to the Savings & Loan. The money was obtained from the sale of real estate owned by my mother, and was then used to open this account. I was the only child living at home with my mother and my brothers and sister all lived over ten (10) miles from our home in Chester. I did not use any of the money in the account and my mother told me that the money was to be divided equally among the four of us. At my mother's death I fulfilled her request and the

money was in fact distributed among the four children and was used to pay the federal estate tax.

It appears that A. Ann Hobbs actually distributed the proceeds in this account equally to the four heirs under the will and her affidavit sets forth facts which demonstrate that she was a trustee for her mother with a fiduciary obligation to treat the proceeds of this savings account as her mother's money upon her mother's death.

Furthermore A. Ann Hobbs actually paid the money to the other beneficiaries, which is enormously persuasive that her allegations that she was the trustee were not for the purpose of avoiding taxes. She was *in fact* a trustee. Since under our case law the other beneficiaries of the estate could have brought an action in equity to have a resulting trust declared in the proceeds of this savings account, *Kanawha Valley Bank v. Friend*, 162 W.Va. 925, 253 S.E.2d 528 (1979); *But see Farrar v. Young*, 159 W.Va. 853, 230 S.E.2d 261 (1976), and since if the beneficiaries had conclusively proven in court all of the facts and allegations to which A. Ann Hobbs swore in her affidavit, they would have been entitled to relief, the estate should not be penalized because A. Ann Hobbs has acted in an honorable and decent way instead of requiring the beneficiaries to go to court.

It is, quite frankly, a pleasure for this Court to have a case before it where the question involves excessive honesty and integrity on the part of a *de facto* trustee rather than our usual fare of knavery and rascality. Since A. Ann Hobbs has saved the courts the burden of declaring a resulting trust after exhaustive litigation, we feel it only just to agree with the executor that the amount in question is taxable to the heirs who actually received the money under claim of right and not to A. Ann Hobbs, who did not receive the money or have any rightful claim to it. Consequently, we affirm the Circuit Court of Hancock County on this issue.

Accordingly, for the foregoing reasons the judgment of the Circuit Court of Hancock County is reversed in part and

affirmed in part and the case is remanded for further proceedings consistent with this opinion.

*Reversed in part and*
*affirmed in part.*

MILLER, JUSTICE, *dissenting*:

It is my belief that the majority in Syllabus Points 1, 2 and 3 adopts a forced construction of W. Va. Code, 44-2-16a, and reads into W. Va. Code, 11-11-5, language that is nonexistent. The result, in my opinion, radically departs from what I consider to be a settled area of West Virginia estate practice.

Without any analysis, the majority holds that W. Va. Code, 44-2-16a, "provides that unless specific direction is given to an executor to pay federal estate taxes from a specific fund, the federal estate taxes shall be apportioned among the beneficiaries in proportion to their *pro rata* shares." Syllabus Point 1, in part. In *Dilmore v. Heflin*, 159 W. Va. 46, 218 S.E.2d 888, 892 (1975), this Court recognized that W. Va. Code, 44-2-16a, was enacted in 1959 in order to modify this Court's holding in *Cuppett v. Neilly*, 143 W. Va. 845, 105 S.E.2d 548 (1958). In *Cuppett*, we said:

> "[T]he general rule supported by the weight of authority is that, in the absence of a state statute or a testamentary direction to the contrary, the ultimate burden of an estate tax falls on the residuary estate if the residuary estate is sufficient for the payment of the tax." 143 W. Va. at 864-65, 105 S.E.2d at 561.

There can be little doubt that W. Va. Code, 44-2-16a(2),[1]

---

[1] The relevant language of W. Va. Code, 44-2-16a(2), is:

"Whenever it appears upon any settlement of accounts or in any other appropriate action or proceeding, that an executor, administrator, curator, trustee or other person acting in a fiduciary capacity, has paid an estate tax levied or assessed under the provisions of any estate tax law of the United States heretofore or hereafter enacted, upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid

modified *Cuppett* by providing generally that the federal estate tax should be shared *pro rata* among the beneficiaries in proportion to the value their inherited property bears to the total value of the estate.[2] What the majority disregards is the provision of W. Va. Code, 44-2-16a(5), which contains the following proviso:

> "But it is expressly provided that the foregoing provisions of this section are subject to the following qualification, that none of such provisions shall in any way impair the right or power of any person by will or by written instrument executed inter vivos to make direction for the payment of such estate taxes, and to designate the fund or funds or property out of which such

---

shall be prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues. Such apportionment shall be made in the proportion that the value of the property, interest or benefit of each such person bears to the total value of the property, interests and benefits received by all such persons interested in the estate, . . ."

[2] The principal purpose of apportionment statutes is to avoid the harsh results sometimes attendant upon the general rule that the burden of estate taxes, in the absence of a contrary direction, falls upon the residuary estate and usually, the natural objects of the testator's bounty. *Hale v. Leeds*, 28 N.J. 277, 146 A.2d 216 (1958); *Re Pepper's Estate*, 307 N.Y. 242, 120 N.E.2d 807 (1954); *Guaranty National Bank v. Mitchell*, 144 W. Va. 828, 111 S.E.2d 494 (1959); 68 A.L.R.3d 714, 730-34 (1976). Thus, it is said the purpose of the apportionment statutes is to require that all persons whose gifts or benefits are included in a taxable estate shall pay a share of the tax in proportion that their gifts or benefits have contributed to the tax. *Re Estate of Erieg*, 439 Pa. 550, 267 A.2d 841 (1970).

Nonetheless, it is often the case that the testator actually prefers those named as specific legatees over the beneficiaries named in the residuary clause or at least intends that these specific legatees take their bequests free from taxation. In *In re Betts Estate*, 2 Ill. App.2d 453, 458, 119 N.E.2d 801, 804 (1954), the court stated:

"Here . . . the apparent intention of the testator was to give specific legacies and that costs of administration, inheritance taxes and other expenses be paid out of the residuary estate."

*See also People v. McCormick*, 327 Ill. 547, 158 N.E. 861 (1927); *Succession of Jones*, 172 So.2d 312 (La. App. 1965); *Thomas v. Fox*, 348 Mass. 152, 202 N.E.2d 912 (1964); *In re Crozier's Estate*, 105 N.H. 440, 201 A.2d 895 (1964).

payment shall be made, and in every such case the provisions of the will or of such written instrument executed inter vivos shall be given effect to the same extent as if this section had not been enacted."

To my mind, this proviso embodies two distinct concepts. First, the testator can direct that his executor pay the taxes. The statutory phrase is: "to make direction for the payment of such estate taxes." W. Va. Code, 42-2-16a(5). In this case, the will so provided in its first article:

"FIRST: I direct that all my just debts, funeral expenses of my last illness and all the expenses of the settlement of my estate, including any taxes which may be assessed by the Federal or State Government, be paid out of my estate by my Executor as soon as conveniently may be done after my decease."

This provision is markedly similar to that contained in *In re Ogburn's Estate*, 406 P.2d 655 (Wyo. 1965), where the court held the language supplied sufficient direction to exonerate the various legacies from the apportionment statute. *Cf. Starr v. Watrous*, 116 Conn. 448, 165 A. 459 (1933); *In re Betts Estate*, 2 Ill. App.2d 453, 119 N.E.2d 801 (1954); *In re Crozier's Estate*, 105 N.H. 440, 201 A.2d 895 (1964); *In re Horn's Estate*, 351 Pa. 131, 40 A.2d 471 (1945); *Baylor v. National Bank of Commerce of Norfolk*, 194 Va. 1, 72 S.E.2d 282 (1952); *In re Cudahy's Will*, 251 Wis. 116, 28 N.W. 340 (1947). *See also*, 69 A.L.R.3d 122, 174 (1976); 71 A.L.R.3d 247, 312 (1976).

The second clause in the statutory apportionment exception is: "and to designate the fund or funds or property out of which such payment shall be made." W. Va. Code, 42-2-16a(5). It is an error in logic to assume, as the majority does, that this phrase imposes a condition on the first phrase: "to make direction for the payment of such taxes." I believe the second phrase simply represents a legislative recognition that a testator, instead of directing the executor to pay the taxes, may in the alternative designate particular assets out of which the taxes should be paid. In my opinion, such language would also constitute

250

sufficient indication of the testator's desire to preclude the application of the general apportionment statute.

Consequently, I would hold that where the testator directs in his will that the executor shall pay all just debts, including taxes which may be assessed out of the estate (which is the case here), there is sufficient direction on the part of the testator to preclude the application of our general apportionment statute. W. Va. Code, 44-2-16a.

The majority's other error is its conclusion that W. Va. Code, 11-11-5,[3] requires an apportionment of the federal estate debt to an amount equal to the federal estate tax due on West Virginia assets.

In *Central Trust Company v. James*, 120 W. Va. 611, 199 S.E. 881 (1938), we held held that the term "debt" or "encumbrance" used in this statute was sufficiently broad to include the debt of federal estate taxes, and such debt could be deducted before computing the State inheritance tax liability. In *Cuppett v. Neilly*, 143 W. Va. 845, 863, 105 S.E.2d 548, 561 (1958), after quoting from the Internal Revenue Code, 26 U.S.C.A. §2002, which makes the executor of an estate primarily liable for payment of the federal estate tax, we said:

> "The federal estate tax is a tax on the right to transmit property by will or under intestacy laws and is gauged by the value of the whole estate, less deductions authorized by federal statute. Kanawha Banking and Trust Company v. Alderson, 129 W.Va. 510, 40 S.E.2d 881; Central Trust Company v. James, 120 W.Va. 611, 199 S.E. 881. It is a tax on the right to transfer property but not on the right to

[3] The relevant portion of W. Va. Code, 11-11-5, is:

"The market value of property is its actual market value after deducting debts and encumbrances for which the same is liable, and to the payment of which it shall actually be subjected. In fixing such market value, allowances shall not be made for debts incurred by the decedent, or encumbrances made by him, unless such debts or encumbrances were incurred or created in good faith for an adequate consideration, nor for any debt in respect whereof there is a right to reimbursement from any other estate or person, unless such reimbursement from any other estate or person cannot be obtained."

receive property. Wilmington Trust Company v. Copeland, 33 Del.Ch. 399, 94 A.2d 703. The federal estate tax is a charge against the estate of the decedent and is payable out of the estate as a whole. In re Poe's Estate, 356 Mo. 276, 201 S.W.2d 441; Rogan v. Taylor, 9 Cir., 136 F.2d 598. It is imposed upon the transfer of the entire net estate of the decedent and not upon any particular legacy, devise or distributive share, and is payable primarily by the executor of the estate before distribution. Bankers Trust Company v. Hess, 2 N.J.Super. 308, 63 A.2d 712."

*See also Guaranty National Bank v. Mitchell,* 144 W. Va. 828, 111 S.E.2d 494 (1959). It is clear to me from the foregoing that once the entire federal estate tax liability can be assessed and collected against the executor as in the present case, then the entire amount can be considered as a debt under W. Va. Code, 11-11-5.

Admittedly, the legislature could, by specific enactment, apportion the federal estate deduction as between the value of the West Virginia and non-West Virginia property[4] as the State of Ohio has done, Ohio Revised Code §§5731.18 to 5731.19. In fact, the majority uses the Ohio statutes as a means of finding some comparable apportionment in W. Va. Code, 11-11-5, which, to my mind, is simply incredible.

The determination made by the majority is a matter for the legislature. Until such time as a proper apportionment satute or amendment to W. Va. Code, 11-11-5, is enacted providing a specific mechanism for confining the federal estate debt to West Virginia property only, I would permit the estate to deduct the full amount of the federal estate tax.

---

[4] The reason that states can determine how much of the federal estate tax debt can be deducted on a State Inheritance Tax return is set forth in *Riggs v. Del Drago,* 317 U.S. 95, 87 L.Ed. 106, 63 S.Ct. 109 (1942):

"Congress did not contemplate that the Government would be interested in the distribution of the estate tax after the tax was paid, and that Congress intended that state law should determine the ultimate thrust of the tax." 317 U.S. at 98, 87 L.Ed. at 111, 63 S.Ct. at 110-11.

*Cuppett* clearly illustrates that once the legislature determines that one of our decisions has created undesirable results, there is no reluctance to pass an appropriate statute. Indeed, the legislature may, in the future, answer the majority, making clear its intent that the entire federal estate tax be deducted from the estate since federal law makes the executor primarily liable and requires that the tax be paid out of the general assets of the estate. The simple point is that this decision to amend the tax statute is within the legislature's prerogative, and not ours. It is impossible to read into W. Va. Code, 11-11-5, the requirement that the federal estate tax debt be apportioned between West Virginia and non-West Virginia property before it can be deducted from the State inheritance tax return.

The settled rule of statutory construction in this jurisdiction is that tax statutes are to be strictly construed and any ambiguity is to be liberally construed in favor of the taxpayer. *Consolidation Coal v. Krupica,* 163 W. Va. 74, 254 S.E.2d 13 (1979); *Woodell v. Dailey,* 65 W. Va. 160, 230 S.E.2d 466 (1977). The majority now stands this rule on its head and adds a new twist by amending the statute to favor the taxing authority. I find the result reached by the author of the majority opinion nothing short of astounding, taking into account that he claims to be ever scrupulous to the concept of judicial restraint and dedication to our prior case law. *See State ex rel. Board of Education v. Rockefeller,* ____ W. Va. ____, 281 S.E.2d 131 (1981) (Neely, J., dissenting).