IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

_____

No. 14-0776

_____

FILED

February 5, 2015

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL.
U. S. BANK NATIONAL ASSOCIATION, *ET AL.*,
Petitioners

v.

THE HONORABLE WARREN R. McGRAW,
JUDGE OF THE CIRCUIT COURT OF WYOMING COUNTY,
WEST VIRGINIA; AND WYOMING COUNTY, WEST VIRGINIA,
Respondents

---

ORIGINAL PROCEEDING IN PROHIBITION

WRIT GRANTED

---

Submitted: January 13, 2015
Filed: February 5 , 2015

Michael W. Carey, Esq.
David R. Pogue, Esq.
Carey, Scott, Douglas & Kessler, PLLC
Charleston, West Virginia

Joseph T. Cramer, Esq.
Shuman, McCuskey & Slicer, PLLC
Charleston, West Virginia

Thomas M. Hefferon, Esq.
Goodwin Procter, LLP
Washington, D.C.

Harry F. Bell, Jr., Esq.
Jonathan W. Price, Esq.
The Bell Law Firm, PLLC
Charleston, West Virginia

Charles Clinton Hunter, Esq.
Reich and Binstock, LLP
Houston, Texas

Counsel for Respondent
Wyoming County, West Virginia

**Jared M. Tully, Esq.**
**Frost Brown Todd, LLC**
**Charleston, West Virginia**

**Thomas V. Flaherty, Esq.**
**Flaherty, Sensabaugh & Bonasso, PLLC**
**Charleston, West Virginia**

**Counsel for the Petitioners**

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.  "The provisions of a written agreement are binding upon the parties thereto and the fact that such agreement was not recorded does not relieve said parties of their obligations thereunder."  Syl. pt. 1, *Farrar v. Young*, 159 W.Va. 853, 230 S.E.2d 261 (1976).

2.  It is not mandatory under West Virginia's recording statutes that an assignment of a trust deed or mortgage, securing a promissory note for the purchase of real estate, be recorded in the office of the clerk of the county commission.  The failure to record the assignment, however, affords no protection to the assignee with regard to other creditors or *bona fide* purchasers of the real estate for value, without notice of the unrecorded assignment.

**Ketchum, Justice**:

This original proceeding in prohibition concerns whether the assignment of a trust deed, securing the payment of a promissory note for the purchase of residential real estate, must be recorded in the office of the clerk of the county commission.

A putative class action was filed in the Circuit Court of Wyoming County against the petitioners, U. S. Bank National Association, *et al.* ("trustees"), by the respondents, Wyoming County and all other similarly situated West Virginia counties ("Wyoming County"). Wyoming County alleged that the recording of trust deed assignments in county record books is required by State law.

Rather than recording trust deed assignments in county record books, the trustees have been registering the assignments, also described as a transfer of rights under the trust deeds, with a private corporation known as Mortgage Electronic Registration Systems, Inc. ("MERS").[1] Contending that trust deed assignments need not be recorded in county record

---

[1] Although the terms "trust deed" ("deed of trust") and "mortgage" are often used interchangeably, there is an important distinction. This Court recently explained in *Sostaric v. Marshall*, _ W.Va. _, 766 S.E.2d 396 (2014):

> A deed of trust is, in effect, a mortgage. Both instruments secure payment of a debt. The primary difference is that the holder of a trust deed does not have to apply to a court in order to foreclose, whereas the holder of a mortgage is required to apply to a court in order to foreclose.

1

books under West Virginia law, the trustees moved to dismiss the complaint.

On July 22, 2014, the circuit court entered an order denying the trustees' motion to dismiss. The circuit court ruled that trust deed assignments are required to be publically recorded and that Wyoming County is entitled to show that the trustees have been unjustly enriched by using MERS, rather than recording the assignments in the county record books and paying the recording fees.

The trustees ask this Court to prohibit the enforcement of the July 22, 2014, order and dismiss Wyoming County's putative class action.[2]

---

Although "mortgages," as such, are not used in this State, *Arnold v. Palmer, Trustee*, 224 W.Va. 495, 502 n. 10, 686 S.E.2d 725, 732 n. 10 (2009), *Young v. Sodaro*, 193 W.Va. 304, 307 n. 7, 456 S.E.2d 31, 34 n. 7 (1995), we will use both terms, "trust deed" and "mortgage," in this opinion, particularly in view of the references to MERS and the nationwide business practice of loan pooling and securitization.

[2] Ordinarily, the denial of a motion to dismiss is interlocutory and is subject to neither an appeal nor prohibition. *State ex rel. Arrow Concrete Co. v. Hill*, 194 W.Va. 239, 245, 460 S.E.2d 54, 60 (1995). *See* Rule 16(a) of the *West Virginia Rules of Appellate Procedure* which states that the issuance of an extraordinary writ is "sparingly exercised."

However, relief in prohibition may be considered where the facts are not in dispute, and an appeal from a crucial legal ruling would prove inadequate. *State ex rel. Preiser v. MacQueen*, 177 W.Va. 273, 275 n. 2, 352 S.E.2d 22, 24 n. 2 (1985). Thus, in the current matter (a putative class action involving a pure question of law concerning the recording of trust deed assignments) relief in prohibition may be considered. *See* F. D. Cleckley, R. J. Davis, L. J. Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(6)[2]*[d]* (4th ed. 2012) (Although the denial of a motion to dismiss may not, ordinarily, be challenged by a writ of prohibition, relief in prohibition may be

2

Upon review, this Court concludes that West Virginia law does not require that the assignment of a trust deed, securing the payment of a promissory note for the purchase of residential real estate, must be recorded in the office of the clerk of the county commission. The circuit court exceeded its jurisdiction in allowing the Wyoming County action to go forward, and the trustees are, therefore, entitled to relief in prohibition.

## I.
## Pooling, Securitization and Registration with MERS

This proceeding arises in the context of a major exception in the housing finance industry to the traditional situation where a trust deed, securing the payment of a promissory note, was rarely assigned. The trustees herein were involved in the business practice of loan pooling and securitization. Briefly stated, pooling and securitization constitute a process of "distributing risk by aggregating debt instruments in a pool, then issuing new securities backed by the pool." *Dictionary of Business and Economics Terms* 639 "securitization" (5th ed. 2012).

---

sought where the remedy of appeal is manifestly inadequate.).

3

The structure of loan pooling and securitization is complex and need not be set forth in detail for purposes of this opinion.[3] A summary of the practice, pertaining to the parties in this action, can be discerned from the allegations in the complaint. A pool of mortgage loans, originating from a lender, is sold to a special-purpose entity known as the depositor. The depositor serves as a conduit to separate the pooled mortgage loans from the lender's other assets and liabilities. The depositor then sells or transfers all rights to the mortgage loans to a trust which issues certificates to investors. *The trustees in this action are fiduciaries of such trusts.* Through the loan pooling and securitization process, investors holding trust certificates can expect an isolated cash flow from their mortgage-backed securities, free from competing claims.

It is undisputed that the trust deeds in this action have been recorded in the record books of the respective West Virginia counties. However, loan pooling and securitization is all about the transfer of the promissory notes, and the assignment or transfer of rights under the trust deeds, from the lenders and depositors to the various trusts. Here, none of the assignments or transfers of rights under the trust deeds have been recorded in the respective offices of the clerk of the county commission. Consequently, no recording fees pertaining to assignments or transfers have been paid.

---

[3] Loan pooling and securitization, in the context of a bank audit conducted by an accounting firm, were involved in *Grant Thornton, LLP v. Kutak Rock, LLP*, 228 W.Va. 226, 229, 719 S.E.2d 394, 397 (2011).

4

Instead, Mortgage Electronic Registration Systems, Inc., or "MERS," a private corporation, was created by the mortgage industry to eliminate the need for publically recorded assignments and the expense associated therewith. MERS maintains a computer database designed to track the ownership rights to mortgage loans throughout the United States. Moreover, at the loan's origination, MERS is designated by the lender and the borrower in the trust deed as the *nominee* for the lender and the lender's successors and assigns, as well as the trust deed *beneficiary*. The trust deed, but not the assignments or transfers thereof, is recorded in the office of the clerk of the county commission.[4]

Thus, the role of MERS in loan pooling and securitization is twofold: (1) It serves as a *registry* for the transfer of ownership rights under the trust deeds and mortgages, and (2) it serves as the purported *mortgagee* under the trust deeds and mortgages, which, the trustees contend, makes the recording of trust deed assignments or transfers in county record books unnecessary.[5]

---

[4] An excellent summary and analysis of loan pooling and securitization in the mortgage industry can be found in A. J. Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title*, 63 Duke L.J. 637 (2013).

[5] According to the complaint, MERS now recommends that, in preparation for foreclosure, a trust deed assignment be recorded "from MERS to the trust that allegedly holds the accompanying note and that seeks to commence foreclosure proceedings."

## II.
## Wyoming County's Class Action

On March 27, 2012, a putative class action was filed in the Circuit Court of Wyoming County by Wyoming County, "on behalf of itself and all other similarly situated West Virginia Counties." The defendants named in the complaint were trustees U. S. Bank National Association; Bank of New York Mellon; Bank of America, National Association; Deutsche Bank; J. P. Morgan Chase & Co.; and John Does 1-20 (various corporations, banking associations, partnerships, limited liability companies or other entities).

The complaint alleged that, although the trusts ostensibly received all rights to the mortgage loans, the promissory notes they hold constitute unsecured debts. That is because county records only show the trust deeds in the name of the original lenders, without any assignments of the trust deeds to others. According to the complaint, in the absence of valid assignments, title to the trust deeds, priority, and the right to foreclose remain with the original lenders. The complaint alleged that, to enjoy the benefits of loan pooling and securitization, the trustees must record the assignments of the trust deeds from the original lenders to the pooled-loan depositors, and from the depositors to the trusts, with payment of the accompanying recording fees.[6]

---

[6] *W.Va. Code*, 59-1-10(a)(1) [2012], provides that the cost of admitting a trust deed to record in the office of the clerk of the county commission is fifteen dollars. Likewise, Wyoming County asserts that it is entitled to a payment of fifteen dollars for each recorded assignment.

The relief demanded in the complaint was, *inter alia*, an injunction requiring the trustees to record all prior trust deed assignments from the original lenders to the depositors and from the depositors to the trusts, and pay the recording fees, "in order to clear title to properties in the Counties."

In February 2014, the trustees filed a motion to dismiss the action for failure to state a claim upon which relief can be granted. *See* W.Va. R. Civ. P. 12(b)(6). The circuit court denied the motion in a brief order entered on July 22, 2014. The circuit court held that the counties have a duty to maintain accurate records regarding interests in real property. Therefore, in this action, the counties should be afforded an opportunity to show that, although the trustees are required to record, or cause to be recorded, trust deed assignments, the trustees have been circumventing that requirement by solely using the MERS registry, thereby unjustly enriching the trustees and harming the counties through lost revenue.

The trustees challenge that ruling in this original proceeding in prohibition.

### III.
### Standard for Relief in Prohibition

This Court has original jurisdiction in prohibition proceedings pursuant to art. VIII, § 3, of the *Constitution of West Virginia*. In considering whether to grant relief in

7

prohibition, this Court stated in the syllabus point of *State ex rel. Vineyard v. O'Brien*, 100 W.Va. 163, 130 S.E. 111 (1925): "The writ of prohibition will issue only in clear cases where the inferior tribunal is proceeding without, or in excess of, jurisdiction." Accord syl. pt. 1, *State ex rel. Progressive Classic Ins. Co. v. Bedell* , 224 W.Va. 453, 686 S.E.2d 593 (2009).

In the current matter, in which the trustees contend that the circuit court is exceeding its jurisdiction in allowing the action to go forward, the relevant guidelines are found in *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). Syllabus point 4 of *Hoover* holds:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

*Accord State ex rel. Fillinger v. Rhodes*, 230 W.Va. 560, 564, 741 S.E.2d 118, 122 (2013);

8

syl. pt. 2, *State ex rel. West Virginia Nat'l Auto Ins. Co. v. Bedell*, 223 W.Va. 222, 672 S.E.2d 358 (2008).

## IV.
## Discussion

In the complaint, Wyoming County does not allege that the MERS registry is illegal *per se*. Instead, Wyoming County contends that the trustees' exclusive use of MERS for the assignment or transfer of a trust deed circumvents this State's statutory requirement that trust deed assignments must be publically recorded. Wyoming County asserts that the use of MERS (1) undermines the integrity of the counties' real property records, to the detriment of an open and vibrant real estate market, (2) fails to provide transferees in the MERS registry with adequate perfection of the debts secured by the trust deeds, (3) deprives the counties of revenue, and (4) unjustly enriches the trustees through the nonpayment of recording fees.

However, seeking relief in prohibition, the trustees contend that West Virginia law does not require that trust deed assignments be publically recorded. The trustees insist that the recording of assignments is optional. Noting that appropriate fees were paid to the counties when the trust deeds were recorded, the trustees assert that they have not been unjustly enriched by failing to record assignments where there is no requirement to do so. The trustees assert that the Wyoming County action threatens to unsettle the terms set forth

9

in the trust deeds between lenders and borrowers, to which Wyoming County is not a party.

Pursuant to art. IX, § 11, of the *Constitution of West Virginia*, the clerk of the county commission has a duty to record and preserve "deeds and other papers presented for record." Derivative of that provision are a number of statutes relating to the public recording of deeds, trust deeds and other documents concerning land transactions. *W.Va. Code*, 39-1-2 [1933], for example, addresses specific requirements for recording deeds, trust deeds and other documents in the office of the clerk of the county commission. Moreover, *W.Va. Code*, 39-1-11 [1963], provides for the placement of writings, authorized by law to be recorded, "in a well-bound book, carefully to be preserved," with a grantor and grantee index. *See also W.Va. Code*, 38-12-9 [1923], specifically providing for the recording and indexing of assignments "admitted to record" in the office of the clerk of the county commission. *Nothing in those statutes mandates the public recording of deeds, trust deeds or trust deed assignments.*

In the case of deeds, this Court has recognized that an unrecorded deed is valid, except as against a *bona fide* purchaser of the property, without notice of the unrecorded deed. *See McElwain v. Wells*, 174 W.Va. 61, 64, 322 S.E.2d 482, 485 (1984) ("Even an unrecorded deed is good against a grantor and his heirs.") In the case of *bona fide* purchasers, the syllabus point in *Alexander v. Andrews*, 135 W.Va. 403, 64 S.E.2d 487 (1951), holds:

10

A grantee in a conveyance of land, to be protected against a prior unrecorded deed for the same property, and to a different person, must be a complete purchaser, without notice of the prior deed, and have paid in full the purchase price for the land purchased by him; but he will be protected to the extent of any purchase money paid therefor before such prior deed is recorded.

*Accord* syl. pt. 3, *Wolfe v. Alpizar*, 219 W.Va. 525, 637 S.E.2d 623 (2006). *See* syl. pt. 1, *United Fuel Gas Co. v. Morley Oil & Gas Co.*, 101 W.Va. 83, 131 S.E. 716 (1926) (To be protected against a prior unrecorded deed, one must be a complete purchaser, must have had no notice of the prior contract or deed, and have paid all the purchase money for the land purchased by him.)

In the current matter, the deeds conveying residential real estate, and the trust deeds securing payment of the promissory notes, were, in fact, publically recorded. Assignments of the trust deeds were not. The issue before this Court is whether the recording of trust deed assignments in the office of the clerk of the county commission is mandatory under West Virginia law.

Three additional statutes are relevant to this Court's inquiry. *W.Va. Code*, 40-1-8 [1993], provides that a written contract for the conveyance of an interest in real estate "shall, from the time it is duly admitted to record, be, as against creditors and purchasers, as valid as if the contract were a deed conveying the estate or interest embraced in the contract." That

11

statute simply places an unrecorded written contract concerning a conveyance of real estate on the same footing as an unrecorded deed. In conjunction with that statute, *W.Va. Code*, 40-1-9 [1963], provides that such contracts, deeds, trust deeds or mortgages, "shall be void, as to creditors, and subsequent purchasers for valuable consideration without notice," until the time of recording in the county where the property is located. Again, nothing in those statutes mandates the public recording of such documents as a matter of law. In any event, *W.Va. Code*, 40-1-16 [1963], states that the provisions of *W.Va. Code*, 40-1-8, and *W.Va. Code*, 40-1-9, "shall have no application *to the transfer or assignment* of any interest created by a trust deed or mortgage." (Emphasis added)

The import of those statutes is that a party assigning a trust deed or mortgage, or receiving an assignment, is under no statutory duty to record the assignment in the office of the county clerk. Recording a trust deed assignment is not mandatory. The assignment is valid among the parties thereto, without any failure of the security, represented by the underlying trust deed or mortgage, for payment of the promissory note. Syllabus point 1 of *Farrar v. Young*, 159 W.Va. 853, 230 S.E.2d 261 (1976), confirms: "The provisions of a written agreement are binding upon the parties thereto and the fact that such agreement was not recorded does not relieve said parties of their obligations thereunder."

Of course, the failure to publically record places the assignment at risk with regard

12

to other creditors and *bona fide* purchasers of the property, without notice of the unrecorded assignment. In that regard, syllabus point 5 of *Citizens Nat'l. Bank of Connellsville v. Harrison-Doddridge Coal & Coke Co.*, 89 W.Va. 659, 109 S.E.892 (1921), states, in part:

> An assignment of a mortgage, as contradistinguished from an assignment of a note or bond mentioned, described and secured in it, is a conveyance of real estate or a contract for such conveyance, . . . and, for protection against the [original] mortgagee and a subsequent purchaser of the mortgaged property for value, the assignee must cause it to be admitted to record.

That same principle is expressed in vol. 5, H. T. Tiffany, *The Law of Real Property* § 1457 (1939):

> An "assignment of mortgage," that is, a transfer of the debt secured by mortgage, together with an express transfer of the mortgage security, is usually regarded as within the operation of the recording acts, this being sometimes expressly provided by statute. The requirement that such an assignment shall be recorded does not render an unrecorded assignment invalid, but it prevents the assignee from asserting any rights by reason of the assignment as against persons who, not knowing of the assignment, and seeing no assignment of record, acted on the assumption that there had been no assignment.

*See* 55 Am. Jur. 2d *Mortgages* § 924 (2009) ("The assignment of a note and mortgage does not need to be recorded to be valid.").

13

The petition filed by the trustees does not allege a current dispute of priorities over a parcel of real estate between a trust deed assignee and a *bona fide* purchaser for value. Rather, the question is whether this State's recording statutes require that a trust deed assignment be publically recorded to have validity in the first instance. The answer is no, although the failure to record exposes the assignee to an element of risk. Accordingly, this Court holds that it is not mandatory under West Virginia's recording statutes that an assignment of a trust deed or mortgage, securing a promissory note for the purchase of real estate, be recorded in the office of the clerk of the county commission. The failure to record the assignment, however, affords no protection to the assignee with regard to other creditors or *bona fide* purchasers of the real estate for value, without notice of the unrecorded assignment.

Our holding is not affected by the fact that this proceeding arose in the context of the MERS system, whereby trust deed and mortgage assignments (also described as a transfer of rights in the security for the debt) have been registered in the MERS database. The Wyoming County complaint demands the recording of all such assignments, including those from the original lenders to the pooled-loan depositors, and from the depositors to the trusts, "in order to clear title to properties in the Counties." The trustees assert, however, that the recording of assignments within the MERS system is merely academic, since MERS is named in the trust deed or mortgage as the beneficial owner of the debt secured by the trust

14

deed, as well as the nominee for the lender and the lender's successors and assigns.[7] Thus, according to the trustees, MERS serves as the mortgagee *of record*, which renders additional recording with the county clerk unnecessary.

We find the following decisions supporting the trustees' position to be noteworthy: *Boyd County ex rel. Hedrick v. MERSCORP, Inc.*, 985 F.Supp.2d 823 (E.D. Ky. 2013) (Action dismissed where counties alleged that MERS, *et al.*, had devised and executed a scheme to avoid paying recording fees for mortgage assignments.); *Union County, Ill. v. MERSCORP, Inc.*, 920 F.Supp.2d 923 (S.D. Ill. 2013) (Class action against electronic mortgage registry dismissed: the recording of mortgages and mortgage assignments not statutorily required.); *Fuller v. MERS*, 888 Fed.Supp.2d 1257, 1279 (M.D. Fla. 2012) ("The Florida Legislature has not yet provided a statutory remedy for Plaintiff [Clerk] to recover fees for unfiled assignments."); *Plymouth County, Iowa ex rel. Raymond v. MERSCORP, Inc.*, 886 F.Supp.2d 1114 (N.D. Iowa 2012) (Putative class action dismissed, where county alleged that mortgage registry was unjustly enriched by registry's failure to record all mortgage assignments.).

---

[7] *W.Va. Code*, 39-1-2 [1933], sets forth the general requirement that the clerk shall not record a document that secures the payment of a debt, unless the document sets forth therein "who, at the time of the execution and delivery thereof, is the beneficial owner of the debt secured thereby."

Upon review of the law in this area, the inexorable conclusion is that the most important factor to be considered is the specific wording of the public recording statutes of the jurisdiction under consideration. In this proceeding, we have determined that the recording statutes in West Virginia do not require that the assignment of a trust deed be recorded in the office of the clerk of the county commission. Any amendments or additions to this State's recording statutes are to be considered by the West Virginia Legislature.[8]

# V.
## Conclusion

The Circuit Court of Wyoming County exceeded its jurisdiction in entering the July

---

[8] Currently, for example, *W.Va. Code*, 38-12-10 [1987], establishes a cause of action against a party holding a recorded lien who fails to execute a proper release. With regard to releases, the following comment appears in vol. 5, C. Palo, *Tiffany Real Property* § 1391.50 (Cum. Supp. 2014-15):

> The development of a secondary market for residential mortgages, as well as a number of changes in the title insurance and mortgage closing service industries, have resulted in a complicated process for the pay-off, discharge and release of mortgage instruments. The Uniform Residential Mortgage Satisfaction Act (URMSA) was developed by the National Conference of Commissioners on Uniform State Laws in 2004, *with the goal of ensuring that mortgagees promptly file documents to clear titles in public records when debt has been paid off*, and to provide uniformity among the states regarding the payoff and release of mortgage loans secured by residential real property. North Carolina and Alabama have enacted laws based on URMSA, and other states are considering adopting the legislation.

(Emphasis added). *See* vol. 7B, *Uniform Laws Annotated*, "Uniform Residential Mortgage Satisfaction Act" 417 (2006).

22, 2014, order which denied the trustees' motion to dismiss. The trustees are granted relief prohibiting the enforcement of the order, and the circuit court is directed to dismiss the Wyoming County action with prejudice.

Writ Granted.