## Charles, et al. v. Whitt.

(Decided February 17, 1920.)

## Appeal from Pike Circuit Court.

1. Attorney and Client—Lien Upon Land for Recovery.—Section 107 Kentucky Statutes, creates, for an attorney, who prosecutes to a recovery an action for lands, for his client, a lien upon the lands.

2. Vendor and Purchaser—Attorney and Client—Lien Upon Land for Recovery.—Section 107 Kentucky Statutes, which provides, "and if the records show the name of the attorney, the defendant shall have notice of the lien" of the attorney, applies only to the defendant in the action and does not apply to a purchaser of the property, who has no connection with the action, and who makes the purchase after the action has terminated.

3. Vendor and Purchaser—Attorney and Client—Liens.—A purchaser, in good faith, for value, without notice of an attorney's lien, created by section 107 Kentucky Statutes, takes the property purchased free from the attorney's lien.

4. Vendor and Purchaser—Attorney's Lien for Services.—The notice, which a purchaser, in good faith, for value of property, upon which an attorney's lien, under section 107 Kentucky Statutes, exists, in order to cause him to take it, burdened with the lien, is either actual or constructive notice, as is applied to a purchaser, under any other circumstances.

5. Vendor and Purchaser—Deeds—Recitals in Deed.—Where in a sale and conveyance of real property, the deed made by the vendor contains recitals of an action at law or a judgment, as a part of the chain of title, which is proposed to be conveyed, the law fastens, upon the vendee, notice of the facts appearing upon the records of the action, and the facts shown by the judgment, and such other facts, as the facts appearing upon the record or judgment, would cause an ordinarily prudent man to make inquiry about, and which, if pursued with ordinary diligence and understanding, would have learned him, provided it was his duty to make such inquiry.

6. Infants—Contract for Legal Services—Ratification.—An infant is not bound upon a contract for the rendition of legal services, where he, in no way, has ratified the contract after arriving at the age of twenty-one years, but, who before receiving any benefits of the contract, repudiates it.

7. Infants—Contract for Legal Services.—Necessary legal services, of value, rendered for an infant, are considered to be necessaries, and the property of the infant may be subjected to payment for them, under a proper state of pleadings, as upon a quantum meruit, but, the infant is not competent to make a contract.

8.  Equity—Knowledge of Outstanding Equity—One who purchases
    and accepts title to real property, with knowledge of an outstand-
    ing equity, in another, takes the property burdened with the equity.

E. D. STEPHENSON and P. B. STRATTON for appellants, P. B.
Stratton, E. D. Stephenson, Stratton & Stephenson and Abner May,
et al.

JOHNSON & HATCHER for appellant, Green Charles.

ROSCOE VANOVER and WHITT & SHANNON for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellants, Abner May, Polly May Stanley,
Martha May Whitt, and Jeff May, were the children of
Joseph and Nancy Justice May, and in 1911, were claim-
ing to be the owners and entitled to the possession of a
tract of land, estimated to contain 781 acres, in Pike
county, and of which others claimed to be the owners
and were in the possession. The appellants, P. B. Strat-
ton and E. D. Stephenson composed a partnership, for
the practice of the profession of law, at Pikeville, and the
appellee, W. Scott Whitt, was, also, a lawyer, but, re-
sided in the county about twenty-five miles from Pike-
ville, the seat of justice for the county. In April, 1911,
Abner May, Polly May Stanley, and Martha May Whitt,
and as appellee claims, also, Jeff May employed the ap-
pellee, Whitt, and Stratton, as lawyers to recover the
lands for them, and entered into a contract, in writing,
which was executed in triplicate, and a copy delivered
to Stratton, and one to Whitt, by the terms of which
the clients, whom we will, for convenience, call the Mays,
engaged the services of Whitt and Stratton "to take
whatever legal steps, they may deem necessary" to re-
cover the tract of land, and to render whatever other
services, as attorneys, which they deemed necessary, in
the prosecution of their claim to the lands, and, as a com-
pensation to the attorneys for their services, agreed to
pay to them, a sum equal to the value of one-half of all
the lands, minerals and timber, the attorneys should re-
cover for them. After Whitt had secured this contract,
he and Stratton prepared a petition for the Mays
against the adversary claimants of the lands. Stratton
drafted the petition, in the presence of Whitt, who se-
cured its verification by their clients. To this petition,
Stratton subscribed the name of Whitt, and the partner-

ship of Stratton & Stephenson. The litigation, which followed, continued for six years, and resulted in three judgments in the circuit court, and two appeals to this court, and finally, in the recovery of the land for the Mays. In 1916, after a return of the action from this court to the circuit court, Jeff May, who had become twenty-one years of age, informed Stratton and Stephenson, that he would not abide by the contract, under which they and Whitt had been prosecuting the action, and that it had never been executed either by himself, Polly May Stanley or Martha May Whitt, and that he and Martha May Whitt were infants, when the contract was made and would repudiate it. Then, Stratton and Stephenson, without the knowledge of Whitt, entered into a contract with the Mays by which the Mays obligated themselves to pay the partnership of Stratton & Stephenson, for the services theretofore rendered by it, and to be thereafter, rendered by it, in the prosecution of the action, in the event of a recovery, a sum equal to the value of one-half of the coals and minerals, which might be in the lands, which they were endeavoring to recover. After the termination of the litigation, on the 3rd day of July, 1917, the Mays, by a deed, conveyed to Stratton & Stephenson, an undivided one-half of the coals and minerals, in the lands, and, on the following day, sold and conveyed to appellant, Charles, the entire surface of the lands, and the remaining one-half of the coals and minerals, in the lands, for which he paid them the sum of $16,500.00. The Mays having failed to compensate Whitt, in any amount, and having disposed of all the property recovered for them, he instituted this action. He set up the terms of his contract, and alleged the performance of it upon his part, and the recovery of the land, and that under the contract, he was entitled to compensation in the sum of $10,000.00. He, also, set out the conveyances to Charles and Stratton & Stephenson, which he averred, were fraudulently made, and, further, alleged, that he had a lien upon the lands to secure the payment of his fee, and that Stratton & Stephenson and Charles had accepted the conveyance with notice of his lien. He prayed for a judgment against the Mays, in the sum of $10,000.00, that it be adjudged a lien upon the lands, and for an enforcement of the lien. The defendants resisted the claims of Whitt, denying that he had any lien upon the lands, or that any contract

of employment of him had been made by any one except
Abner May; that he had wholly failed to perform the
contract with Abner May, but, had abandoned the con-
tract and refused to perform any services in the action
to recover the lands; denied the execution of the contract
sued on by Polly May Stanley, Martha May Whitt and
Jeff May, and averred, that the latter two, were infants
at the time of its making and execution; that Charles
and Stratton & Stephenson were *bona fide* purchasers in
good faith, for value and without notice of any lien or
claim of lien by Whitt. The court adjudged, that Whitt
recover of the Mays jointly, the sum of $1,952.00, which
was adjudged to be a lien upon the interests in the lands
purchased by Charles and that same be enforced; and
that Whitt recover of Stratton & Stephenson, an undi-
vided one-third of the coals and minerals, which had been
conveyed to them, and that they convey such interest to
him. From this judgment, all of the defendants have
appealed.

(a) The appeal of Green Charles will be first con-
sidered. Section 107, Kentucky Statutes, creates for the
plaintiff's attorney in an action for the recovery of
lands, a lien upon the lands, if recovered, to secure the
payment of his fee, in the absence of a contract, which
would dispense with the lien. McIntosh v. Bach, 110
Ky. 701; Sears v. Collie, 148 Ky. 444; Johnson v. Breck-
enridge, 4 K. L. R. 994; Eginton v. Rusk, 3 K. L. R. 689.
The lien, however, is purely a statutory one, and, for
that reason, is not to be given a wider scope, than is
provided by the statute. Rowe v. Fogle 88 Ky. 105. Con-
ceding, for the present, that the contract was a binding
one upon the Mays, and that Whitt substantially per-
formed it upon his part when the judgment, by which
the land was recovered was rendered, that he would
have a lien upon the land to secure the payment of the
fee provided for in the contract, would be beyond con-
troversy, and the lien would relate back to the institution
of the suit. If, however, he failed to take steps to enforce
the lien, or to so make the record, that it would be notice
to one, whose duty it was to inquire about it, that such
a lien existed, and after the termination of the litigation
the owners of the land should convey the legal title to a
purchaser who should acquire it in good faith, and for
value and without notice of the lien, it would no longer
attach to the land in the hands of such purchaser. 2 R. C.

L. 1075. In the instant case, Charles is not a *lis pendens* purchaser, as said by the trial court, as he did not acquire the land until after the final judgment, in the action to recover it, had been rendered and the litigation had completely terminated. The provision of section 107, *supra,* which provides, "and if the records show the name of the attorney, the defendant shall have notice of the lien," would not, by the force of the statute, have the effect of making him a purchaser with notice, as he was not a defendant in the action in which the land was recovered, nor a party to it in any way, and the above provision is for the benefit of the defendant in the action, and should not be extended beyond its purpose. Tyler v. Slemp, 124 Ky. 213. That Charles had two elements of a purchaser for value in good faith and without notice, there can be no doubt. He paid a valuable consideration for the property, and there is nothing in the record, to indicate, that his purpose, in purchasing, was to obtain an unfair advantage, or was otherwise, than in good faith. There is no pretense, that he had any actual knowledge, from any source, of the lien of Whitt, or that he had actual knowledge of any fact, from which he could have reasonably inferred, that Whitt had, or was claiming a lien upon the property. The same rule should be applied to Charles, as is applied in determining whether a purchaser, in any other character of circumstances, was or was not without notice, and, in the absence of actual notice, a constructive notice is sufficient to fasten, upon a purchaser, notice of the outstanding claim of another. Knowledge is fastened by law upon a purchaser, where he has such knowledge of facts as would put an ordinarily prudent man upon inquiry, where it is his duty to inquire, and the inquiry being pursued with ordinary diligence and understanding, would lead to knowledge of the required fact. Willis v. Vallett, 4 Met. 186; Ormes v. Weller, 21 R. 763; Interstate Insurance Co. v. Bailey, 29 K. L. R. 468; Russell v. Petree, 10 B. M. 184. Hence, it is insisted, that Charles, having heard of the pendency of the action wherein the lands were recovered, should have made diligent inquiry and investigation of the records of the court, to ascertain if a lien existed, before making the purchase, but, it does not appear, that if he had done so, he could or would have ascertained the fact. He deposes, that he saw one of the opinions of this court in the action, and observed,

that Stratton & Stephenson were the attorneys for the plaintiffs, and never heard of Whitt having any connection with the case. The deed, executed to Charles for his purchase of the interest in the lands, in describing the lands conveyed to him, recites that, "it is the same property lately recovered, from A. E. Justice by the heirs of Nancy May Justice, by judgment in the Court of Appeals, of Kentucky, styled, Justice, et al. v. May, et al.. and reported 176 Ky. 78." A purchaser of lands, is chargeable, as a general rule, with notice of everything affecting the lands, which appears on the face of any deed, which forms, a necessary link in the chain of title, under which he holds and, further, with notice of every fact, which he could have learned from inquiry, and which the things, recited in the deeds, made it his duty to inquire about. Honore v. Bakewell, 6 B. M. 67; Hocksmith v. Damron, 1 Mon. 235; Shuttleworth v. Ky. Coal Co., 22 K. L. R. 1806; Deskins v. Big Sandy Co., 121 Ky. 601; Bailey v. Southern Ry. Co., 112 Ky. 424; Dotson v. Merritt, 141 Ky. 155 A recitation in a deed of a judgment or an action at law, as a part of the chain of title, is constructive notice to the grantee of the things, which are shown by the record of the action or the judgment, and hence, although Charles had no actual knowledge of anything appearing upon the records or judgments in the action for the recovery of the land, if anything did appear thereon, which would have put an ordinarily prudent man upon inquiry which, by ordinary diligent pursuit, would have developed, to him the fact of the lien, he was chargeable with notice of it, and hence, whatever facts appear upon such, record, will have to be treated as being within Charles' knowledge, when he accepted a deed, and paid for the land. It is conceded, that the litigation began in the year, 1911, and ended in 1917, a period of six years in the circuit court and this court, and during all of that time, Whitt's name does not appear upon any of the records, or anywhere in the records as an attorney, except, that his name is subscribed to the petition. Thereafter, all pleadings and all the proceedings appeared in the name of Stratton & Stephenson, as the attorneys, conducting the action for the plaintiffs, and the judgment, for the recovery of the land, is silent as to any connection which Whitt had with the action. The knowledge, that one was once employed as an attorney in an action, is not notice that he has a lien

upon the recovery. As to whether a purchaser shall be held to have constructive notice of a prior equity, must, in each case, depend upon the facts and circumstances peculiar to it. An ordinarily prudent man without any other knowledge of an attorney having any connection with an action, and who should examine the record and judgments in the action and find, that it had been pending for six years, and in it there had been two judgments in the circuit court and two in the appellate court, and many pleadings and written evidence of proceedings filed, and the case continuously carried upon the docket. during its pendency, and he should find the name of an attorney signed to the original petition, and nowhere, thereafter, appearing in the record, but the names of other attorneys appearing as having conducted the litigation, would reasonably conclude, that the attorney's name was to the petition by mistake, or he had, long since, severed his connection with the action and it can not be said, that the one circumstance, as thus surrounded, was such as to put an ordinarily prudent man upon inquiry, or indicate negligence upon his part in failing to suspect a latent equity. Whitt, by his negligence in failing to cause the records to show any evidences of his lien, should bear the consequences, rather than an unsuspecting purchaser.

(b) Upon the issue, as to whether Whitt performed the contract so as to entitle him to the fee provided by it in the event of recovery, or whether he abandoned it, the evidence is very conflicting, but the chancellor adjudged for him upon the issue, and while the active preparation and management of the action were taken by Stratton & Stephenson, under all the facts developed by the record, we are not prepared to hold that Whitt did not perform all the services, that were in contemplation between him and Stratton when the contract was entered into. The clients made no complaint of Whitt pending the litigation, and make none now in their testimony. It is clear, that they, with the exception, probably, of Jeff May, considered Whitt an attorney in the case for them throughout the litigation. They consulted with him when they desired to do so, and, at no time, indicated to him, that they proposed to dispense with his services. Whitt deposes, that he employed Stratton to assist him in the action, because Stratton resided at the seat of justice, and could, more readily, give attention

to all necessary proceedings, and to notify him when his services were necessary. He further testifies, that he assisted generally in the preparation of the case, and that his clients never conceived the idea, that he had abandoned them, is apparent, when through them one of the briefs filed in the Court of Appeals by Stratton, was brought to him by one of the clients for his consideration. Stratton & Stephenson deny much of what Whitt deposes, that he did in the prosecution of the action, and Stratton denies, that it was through Whitt, that he received the employment, and deposes, that the firm of Stratton & Stephenson had been engaged by the father of their clients, theretofore, but, the significant fact remains, that the contract under which the action was instituted and prosecuted for a period of five years, was prepared by Whitt, and that it did not include the firm name of Stratton & Stephenson, which it would appear, that it would have done, if it had been a contract made with that firm in the first instance, as the moving spirit in the negotiations. Hence, we are not disposed to interfere with the judgment of the chancellor upon that issue.

(c) Pollie May Stanley, Martha May Whitt and Jeff May, in their answer, deny the execution of the writing sued upon, and two of them allege their infancy as a defense to any recovery upon it. When they testify, however, the first two named, state, unreservedly, that they executed the writing containing the contract, and Martha May Whitt, who interposes her infancy in the pleading as a bar to recovery against her, testified, that she executed the writing, and does not, now desire to repudiate it, and she should not surely be required to do so. Jeff May, who was an infant when the contract was made, denies, that he subscribed it, or ever made any such contract. While the evidence is contradictory upon the issue as to whether he made and executed the contract, he was, then, an infant, only seventeen years of age, and has, in no way, ratified it since that time, and is not bound upon it, and it was error to adjudge a recovery of him, because of it. If he executed or made the contract sued on, he repudiated it very soon after becoming twenty-one years of age and before receiving any benefits of the contract. While legal services of value, rendered for an infant, are treated as necessaries, for which he may be required to pay a reasonable compensation, he is not competent to make a contract for same,

and the pleading and issues, in the instant case, were not such as to permit the court to render a judgment against him in the nature of a *quantum meruit.* 22 Cyc. 582; Pope v. Lyttle, 157 Ky. 659.

(d) It was error to adjudge, that Whitt recover one-third of the coal and minerals, which had been conveyed to Stratton & Stephenson. He merely had a lien upon the property, recovered, and was not the owner of it in kind, and if the Mays had remained the owners, he would not have been entitled to recover from them any part of the property in kind, but, his only right would have been to have an enforcement of his lien. There were no contractual relations between Whitt and any of the parties which justified such a judgment. When the final judgment was rendered in the action for the recovery of the land, Whitt, under his contract, as between him and Stratton was entitled to have a fee equal to the then value of one-fourth of the interests in the land recovered by him for Abner May, Polly May Stanley, and Martha Whitt, and had a lien upon such interests to secure its payment, and Stratton & Stephenson, through Stratton, would have been entitled to a similar fee, secured by a similar lien, upon the interest recovered by them, if they had not, by subsequent contract with the Mays, reduced the amount of their fee, and by the acceptance of conveyance to them, of a portion, released their lien upon the remainder of the property. Under the contract, if it be conceded that Whitt and Stratton performed equal services, one-half of the interest of each of the clients in the property, would be all that Whitt could have been equitably considered to have recovered, and hence, his lien would extend to only one-half of the property recovered. The sale by the Mays to Charles, without the knowledge or consent of Whitt, could not affect his right to a lien upon the remainder of the property, nor could the acceptance of a conveyance by Stratton & Stephenson to the portion of the property conveyed to them, with the full knowledge upon their part of the equity of Whitt, affect his lien upon that portion of the property. Charles being a purchaser in good faith for value, and without notice, of the portion of the property conveyed to him, there was left only the portion, conveyed to Stratton & Stephenson subject to Whitt's lien. It does not appear, that the loss of Whitt's lien upon the property bought by Charles, is attributable

in any way to Stratton & Stephenson.  Stratton & Stephenson had full knowledge of the lien of Whitt upon the portion of the property conveyed to them, and necessarily took it subject to the burden.  Long v. Kerrigan, 13 K. L. R. 433; Lain v. Morton, 23 K. L. R. 438; Perry v. Trimble, 25 K. L. R. 725; McGuire v. Whitt, 25 K. L. R. 2275; Allison v. Russell, 3 K. L. R. 198; Harris v. Calmes, 100 Ky. 272.  They became trustees for the preservation of Whitt's lien.  Under the facts, it is not important, that the contract under which the action for the recovery of the lands was instituted, was a contract with Stratton and not Stratton & Stephenson.  It was a business entirely within the scope of the partnership contract of Stratton & Stephenson, and Stephenson was entitled to share the profits of it, equally with Stratton. Chambers v. Johnson, 180 Ky. 73.  The firm of Stratton & Stephenson engaged in the prosecution of the action with the knowledge and acquiescence of both Whitt and the Mays, as the name of the partnership was subscribed to the petition at the very beginning, in Whitt's presence, and he treated the partnership as being the party with whom his contract existed.  Hence, the lien, which the partnership had through Stratton, was of equal dignity with that of Whitt and the subsequent contract with the Mays, made by Stratton & Stephenson, was not a new employment, but a new agreement as to the amount of the fee which the partnership was to receive, and of it, Whitt can not complain, except to the extent, that it undertook to displace his lien, which it could not do without his consent.  Stratton & Stephenson are in no worse condition, than if they had never received the conveyance, but had voluntarily released their lien upon all the property except the portion, which was conveyed to them, and they surely yet have a right in the remaining part equal and of the same dignity as that of Whitt. Hence, in the condition in which the parties have placed themselves, by the loss of the lien upon the remainder of the property, by both parties, and the settlement of the lien of Stratton & Stephenson by their acceptance of a conveyance of a portion of the property, in kind, it is a practicable equity, under all the circumstances, that Whitt should have a lien upon the undivided one-half only of each of the interests in the land, which was conveyed to Stratton & Stephenson by Abner May, Polly May Stanley, and Martha May Whitt, respectively,

which would be an undivided three-eighths of the whole, to which Stratton & Stephenson hold title.

The judgment is therefore reversed, and the cause remanded with directions to set aside the judgment and to dismiss the action as to appellant, Charles; to ascertain and fix the amount of the fee to which Whitt is entitled under his contract, as against Abner May, Polly May Stanley and Martha May Whitt, and to render a judgment in his favor against them respectively, therefor, and to adjudge that same is a lien upon an undivided one-half of the interest in the coal and minerals, which each of them conveyed to Stratton & Stehpenson, and which as above stated, amounts in all, to three-eighths of the coal and minerals to which Stratton & Stephenson hold title, and to enter a judgment for the enforcement of Whitt's lien against same, and for such proceedings, as are not inconsistent with this opinion.