466 S.E.2d 497

**Linda M. STATLER, Guardian of Destiny Lynn Ware, Petitioner Below, Appellee,**

v.

**Vel Anne DODSON, Executrix of Estate of Richard A. Ware, Respondent Below, Appellee.**

**Michael L. Scales, Appellant.**

No. 22544.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 13, 1995.

Decided Dec. 13, 1995.

Linda M. Statler, Pro Se.

Cindy L. Scales, Martinsburg, for Appellant.

Braun A. Hamstead, Nancy A. Dalby, Hamstead & Associates, L.C., Charles Town, for Ms. Dodson.

RECHT, Justice:

Michael L. Scales, a former counsel of record for Destiny Lynn Ware, an infant, seeks attorney's fees for the services he performed on her behalf. Mr. Scales appeals a decision of the Circuit Court of Jefferson County denying his attorney's fees based on findings that the action was adversarial to the estate of Richard A. Ware, and that no implied contract existed between Mr. Scales and Miss Ware, the pretermitted child of Richard A. Ware. Because we find that Mr. Scales may be entitled to attorney's fees, payable on behalf of Miss Ware by her guardian, Linda M. Statler, we remand this case for a determination of, first, whether Mr. Scales' employment on behalf of Miss Ware was reasonably necessary and, second, if said employment is found reasonably necessary, whether the amount of legal fees requested by Mr. Scales is a "reasonable fee" under the factors outlined in Rule 1.5 (1990) of the *Rules of Professional Conduct* and in Syl. pt. 4, *Aetna Cas. & Sur. Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986).

## I.

### FACTS AND BACKGROUND

When Richard A. Ware died on March 9, 1990, his fiancee, Ms. Statler, was expecting their child, Destiny Lynn Ware, who was born on November 14, 1990. The decedent's will appointed Vel Ann Dodson, one of his then living children, Executrix of his estate. At first, the estate denied the decedent's paternity of the unborn child. On April 6, 1990, Ms. Statler engaged Mr. Scales to represent her interests and the interests of her unborn child "individually and a next friend of Baby Ware." [1] Ms. Statler agreed that Mr. Scales would receive one-third of the amount recovered on behalf of her child if Mr. Scales asserted and proved that her child was the pretermitted child of Mr. Ware under *W.Va.Code* 41-4-1 (1972).[2]

Mr. Scales arranged for blood testing which showed that the infant was the natural child of the decedent[3] and, as such is a pretermitted child. Mr. Scales, on behalf of Miss Ware, petitioned the circuit court for the infant's share of the decedent's estate. He also filed an answer and counter claim in another civil action and advanced some of the costs of the litigation. According to a letter received by this Court on November 3, 1995 from Ms. Statler, Ms. Statler, after a meeting with the decedent's family during which the family acknowledged that Miss Ware was the decedent's daughter, informed Mr. Scales of the agreement and requested that he not proceed with the litigation. The record is not clear about when this meeting between Ms. Statler and Mr. Scales occurred. Ms. Statler maintains that after this meeting Mr. Scales continued with the litigation. Accord-

---

1. The record does not indicate that Mr. Scales ever informed Ms. Statler that the Child Advocate Office could pursue a paternity action on her behalf at no charge. The better practice for attorneys to follow in cases necessitating a paternity determination is at least to inform the individual seeking said resolution that such service is provided by the Child Advocate Office at no charge.

2. *W.Va.Code* 41-4-1 (1972) states:

   If any person die [sic] leaving a child, or his wife with child, which shall be born alive, and leaving a will made when such person had no child living, wherein any child he might have is not provided for or mentioned, such child, or any descendant of his, shall succeed to such portion of the testator's estate as he would have been entitled to if the testator had died intestate; and towards raising such portion the devisees and legatees shall, out of what is devised and bequeathed to them, contribute ratably, either in kind or in money, as a court, in the particular case, may deem most proper. But if any such child, or descendant, die under the age of eighteen years, unmarried and without issue, his portion of the estate, or so much thereof as may remain unexpended in his support and education, shall revert to the person or persons to whom it was given by the will.

3. According to the brief for Ms. Dodson, the estate acknowledged that Miss Ware was the decedent's child based on physical characteristics that became apparent as the child matured. Ms. Dodson alleges that the blood test results were suspect because of various procedural mistakes.

ing to Ms. Statler, on March 9, 1992, Ms. Statler wrote to Mr. Scales dismissing him, and shortly thereafter, entered into an agreement with the estate whereby her child, Miss Ware, would receive a distribution from the estate. The estate, by letter dated March 18, 1991, had accepted Miss Ware but the letter left blank the amount of distribution. The distribution was in the amount of $26,-121.57, with interest thereon at the legal rate from November 1990 for a total of $28,121.57.

Mr. Scales requested attorney's fees of $12,377.86 based on his 24 hours of actual services rendered at $110 per hour or, in the alternative $9,737.86 based on the one-third contingency fee of the March 18, 1991 distribution.[4] Mr. Scales also requests to be reimbursed $301 for the costs he advanced.

After Ms. Statler advised Mr. Scales that he was discharged and she would "negotiate her own settlement," Mr. Scales withdrew as counsel of record and filed a motion in circuit court requesting attorney's fees. In his May 26, 1992 motion to the circuit court, Mr. Scales argued that payment of these fees was required under the contingency fee agreement. The circuit court denied the attorney's fee motion based on its findings that the unborn child could not enter into a contract by next friend, that no services were performed at the instance of the infant or her legal guardian and that Mr. Scales' services had not benefited the estate. Mr. Scales appealed to this Court. On appeal, although the estate takes no position relative to the payment of attorney's fees out of Miss Ware's portion of the estate, the estate argues that because Mr. Scales' services accrued no benefit to the estate, the requested fees should not be charged to the estate. During oral argument, Ms. Statler maintained that although she did not oppose the payment of some fee to Mr. Scales, she thought that the amount requested was unreasonable, given the service provided specifically after she requested that the litigation be delayed. Ms. Statler indicated that she

was willing to pay about $2,400 in attorney's fees.

## II.

### RECOVERY FROM THE ESTATE

■ Ms. Dodson, the executrix of the decedent's estate, argues that any fees awarded in this case should not be chargeable to the estate because this action was adversarial to the estate. We have traditionally held that when an action is adversarial to the estate, the attorneys' fees generated on behalf of that adversarial action are not chargeable to the estate. Syl. pt. 3, *Security Nat. Bank & Trust Co. v. Willim*, 153 W.Va. 299, 168 S.E.2d 555 (1969), states:

> The services of an attorney cannot be rewarded by fees paid out of an estate where such attorney has represented litigants who sought to recover funds from an estate in a purely adversary capacity.

*Accord Farrar v. Young*, 159 W.Va. 853, 863, 230 S.E.2d 261, 267 (1976); Syl. pt. 6, *Wheeling Dollar Savings & Trust Co. v. Leedy*, 158 W.Va. 926, 216 S.E.2d 560 (1975). In *Security National*, we approved the payment of attorneys' fees when the litigation benefited the estate, but when "the litigation merely involve[d] a dispute between the parties in adversary proceedings," no attorneys' fees for clients adverse to the estate were payable from the estate. There were two phases of litigation in *Security National;* the first stage involved litigation which resulted in the determination that an adopted daughter of the testatrix's granddaughter took nothing under the will. Attorneys' fees were awarded because "that litigation promoted the interests of the parties who finally prevailed." *Security Nat. Bank & Trust Co. v. Willim*, 153 W.Va. at 306, 168 S.E.2d at 559. During the second stage, the litigation resulted from the unsuccessful attempts of the estates of a niece and a nephew of the testatrix to take under the will. We denied attorneys' fees in the second phase because although in the first phase the interests of the estates of the

---

4. Mr. Scales' request for $12,377.86 is based on one-third of the distribution ($9,737.86) plus the 24 additional hours, at his $110 hourly rate, that he spent on the case after the distribution. According to the report submitted by Mr. Scales, he spent a total of 31.75 hours on the case, with most of his time spent after the March 18, 1991 letter from the decedent's estate to Ms. Statler accepting Miss Ware as the decedent's daughter.

niece and the nephew were "inimical to those of" the estate, "they became adversaries" in the second phase. *Security Nat. Bank & Trust Co. v. Willim*, 153 W.Va. at 305, 168 S.E.2d at 559.

In Syl., *Beuter v. Beuter*, 122 W.Va. 103, 7 S.E.2d 505 (1940), we stated:

In the absence of a valid contract of employment, an allowance of fees to an attorney, payable out of the estate of a decedent, can only be justified upon a showing of services beneficial to the estate, or necessary to its settlement, as distinguished from services performed for a client presenting a claim against the estate.

*Beuter* denied the payment of the attorneys' fees from the estate to a lawyer who brought suit on behalf of the decedent's former wife claiming a part of his estate. We denied the payment of the attorneys' fees of the former wife because "the claims as to the marital relationship and alleged indebtedness ... were in no sense in the interest of the estate but against it and its creditors." *Beuter v. Beuter*, 122 W.Va. at 107, 7 S.E.2d at 507.

Because Mr. Scales was representing a client whose interests were adversarial to the estate, we find that the circuit court did not err in finding that the estate is not liable for the payment of any attorney's fees sought by Mr. Scales.

### III.

### CONTRACT BY INFANT FOR LEGAL SERVICES

Mr. Scales maintains that the circuit court erred in holding that no contract existed between him and the infant, Miss Ware, for the payment of his fees. The circuit court found that no express contract existed because on April 6, 1990, the infant was not a person in being when her mother, as her next friend, engaged the legal services of Mr. Scales. The circuit court also found that no contract could be implied because the legal "services were not performed at the instance of ... [the infant] or her legal guardian, nor could they be classified as necessaries." The circuit court denied Mr. Scales' motion for fees because although "it appears that Mr. Scales has benefitted ... [the infant] mightily," the court knew "of no legal theory upon which it can made the proceeds of this estate to be distributed to ... [the infant] chargeable for Mr. Scales' fees."

■ Although at common law a contract by an infant for legal services not for necessaries could not be implied, because of the need to assure an infant's access to the judicial system, we find for the reasons discussed hereafter that contracts for legal services between infants and their lawyers will be implied and therefore, enforceable: provided, (1) the employment of a lawyer on behalf of the infant was reasonably necessary; (2) the contract was fair and reasonable at the time it was entered; and, (3) the contract is fair in relation to the amount of legal services needed and performed.

■ The traditional means of protecting an infant's interest was to refuse to imply contracts involving infants except for obligations to pay for necessaries.[5] When the contract was for necessaries, the infant's liability was found not on the actual contract but upon a contract implied by law, or a quasi contract.[6] *See Bear's Adm'x v. Bear*, 131 Va. 447, 109 S.E. 313 (1921); H.R., Annotation, *Liability of Infant or his Estate for Rent*, 68 A.L.R. 1185 (1930). When a contract for legal services falls within the concept of "necessaries," courts have generally used a quasi contract theory to uphold such legal contracts. *See* B.B.B., Annotation,

---

**5.** Necessaries generally include food, clothing, shelter and medical services for an infant and family. The determination of what constitutes necessaries is a mixed question of law and fact to be decided on a case-by-case basis.

**6.** With an express contract involving an infant, generally the common law divided such agreements into three classes: absolutely void, voidable and valid. "Agreements which were deemed clearly for the advantage of the infant were valid and absolutely binding, while those injurious to the infant were void. Agreements the effect of which might be beneficial or might be injurious were held voidable at the election of the infant on arrival at maturity." 42 Am.Jr.2d *Infants* § 59 (1969). However, in this case there was no express contract by the infant with Mr. Scales for legal services.

*Power of Guardian ad Litem or Next Friend to Bind Infant by his Contract with Attorney Fixing Compensation,* 7 A.L.R. 108 (1920). Legal services rendered for prosecution of an infant's claim based on personal injuries, or protection of an infant's liberty, security or reputation, have generally been considered necessaries rendering the infant liable for such service. However, most courts have held that legal services relating to an infant's estate do not constitute necessaries. *See McIsaac v. Adams,* 190 Mass. 117, 76 N.E. 654 (1906) (infant's property rights do not come within the term "necessaries"); *Englebert v. Troxell,* 40 Neb. 195, 58 N.W. 852 (1894); *Grissom v. Beidleman,* 35 Okla. 343, 129 P. 853 (1912); *Munson v. Washband,* 31 Conn. 303 (1863); Annotation, *Infant's Liability for Services Rendered by Attorney At Law under Contract with Him,* 13 A.L.R.3d 1251 (1967).

Because of the harshness of the necessaries rule, various theories have been advanced to justify implying a contract for legal services not involving the traditional necessaries. Some courts have broadened the definition of necessaries to include the protection of valuable property rights. *See Epperson v. Nugent,* 57 Miss. 45 (1879) (infant, without guardian, liable for legal fees incurred to protect infant's property rights, which were held to constitute necessaries); *Roberts v. Vaughn,* 142 Tenn. 361, 219 S.W. 1034 (1920) (infant's legal fees in a suit against his father's will were considered necessaries); *Charles v. Whitt,* 187 Ky. 77, 218 S.W. 994 (1920) (legal services to protect infant's property rights may be treated as necessaries); *Owens v. Gunther,* 75 Ark. 37, 86 S.W. 851 (1905) (considered as necessaries the legal services protecting an infant's property rights in a suit where interests of the infant and his guardian were adverse). Other courts have implied a contract when the infant benefits from the legal services performed. *See Porter v. Wilson,* 106 N.H. 270, 209 A.2d 730 (1965) (advancing "from the concept of necessaries to the concept that an infant is liable to make restitution for the *benefit* he receives whether or not classed as necessaries"); *Sneed v. Sneed,* 681 P.2d 754 (Okla.1984) (attorney's work inured for the infant's benefit, which was affirmed by infant on reaching her majority, required the payment of "reasonable fees"). Some courts have applied a "restoration theory" to require a minor to pay legal fees "to restore" to the attorney the time and effort expended on behalf of the infant. *See Downey v. Northern Pac. R. Co.,* 72 Mont. 166, 232 P. 531 (1924); *Spencer v. Collins,* 156 Cal. 298, 104 P. 320 (1909).

Several other courts have approved the award of legal fees involving representation of an infant. In *Leonard C. Arnold, Ltd. v. Northern Trust Co. of Chicago,* 139 Ill. App.3d 683, 93 Ill.Dec. 843, 846, 487 N.E.2d 668, 671 (Ill.App.1985), *aff'd in part, and rev'd in part,* 116 Ill.2d 157, 107 Ill.Dec. 224, 506 N.E.2d 1279 (1987) (a personal injury suit involving a minor), the Illinois appellate court noted that the "allowance of a claim for attorney's fees against a minor's estate is within the discretion of the court." (Citation omitted.) The Illinois appellate court noted that the minor's next friend, who initiates suit on behalf of the minor, "can employ an attorney to represent the minor's claim and agree to pay a reasonable fee out of any recovery." The court looked to various provisions in the Illinois Probate Act, which sought to protect the minor's interest and to allow representation of the minor's interest and determined that the legal fee should be examined to determine "the reasonableness of the fees earned in this matter by the Attorneys." 139 Ill.App.3d at 690–91, 93 Ill. Dec. at 848, 487 N.E.2d at 673.

In *Nixon v. Bryson,* 488 So.2d 607, 609 (Fla.App.), *review denied, sub. nom., Ratiner & Glinn v. Bryson,* 494 So.2d 1152 (Fla.1986) (wrongful death action brought of behalf of a minor), the Florida court held "that for a contract for legal services on behalf of a minor to be binding on the minor, the trial court must consider not only whether it was reasonably necessary to employ an attorney on behalf of the minor and whether the contract was fair and reasonable at the time it was entered into, but also whether the contract was fair in relation to the amount of legal services performed."

In determining whether to allow a contract for legal services on behalf of an

infant to be binding on the infant, we are guided by "the policy of the law to protect infants against their own mistakes or improvidence, and from designs of other, and to discourage adults from contracting with an infant." 43 C.J.S. *Infants* § 180 (1978). We note that an infant's participation in a legal action is dealt with by the *W.V.R.Civ.P.*, Rule 17(c) (1978),[7] W.Va.Code 56–4–9 (1923) ("[a]ny minor entitled to sue may do so by his next friend or guardian"), W.Va.Code 56–4–10 (1923) (requiring appointment of a "guardian ad litem to such infant or insane defendant"),[8] and W.Va.Code 56–10–4 (1982) (requiring court approval of a compromise involving an infant).

Although the Code and the Rules assure the protection of an infant's interests after the institution of a legal action, unless fees for legal services on behalf of an infant are allowed, most infants would be denied access to the judicial system, except for necessaries. The key to accessing the judicial system is legal representation. If minors are not required to pay for legal representation, they will not be able to protect their various interests. However, because of the need to assure that the infant's interests are protected from the legal representation, we find that contracts for legal services between infants and their lawyers will be implied and therefore, enforceable only when: (1) the employment of a lawyer on behalf of the infant was reasonably necessary; (2) the contract was fair and reasonable at the time it was entered; and, (3) the contract is fair in relation to the amount of legal services needed and performed. This three-part standard requiring the determinations, first, that the legal employment was "reasonably necessary," second, that the contract was fair and reasonable at the time it was entered, and third, that the legal fees were "reasonable" in relation to the legal service needed and performed, is similar to the two-part determination for the payment of a guardian ad litem under W.Va.Code 56–4–10 (1923). *See* note 8 for payment provision of W.Va.Code 56–4–10.

■ In this case, we note that Ms. Statler, as next friend of Miss Ware, entered a thirty-three and one-third percent (33⅓%) contingency fee agreement with Mr. Scales.[9] In the agreement, Mr. Scales was to secure for Miss Ware, a portion of her father's estate who died testate but without provision for Miss Ware. Although the circuit court stat-

---

7. Rule 17(c) states:

   *Infants, incompetent persons, or convicts.*— Whenever an infant, incompetent person, or convict had a duly qualified representative, such as a guardian, curator, committee or other like fiduciary, such representative may sue or defend on behalf of the infant, incompetent person, or convict. If a person under any disability does not have a duly qualified representative he may sue by his next friend. The court or clerk shall appoint a discreet and competent attorney at law as guardian ad litem for an infant, incompetent person, or convict not otherwise represented in an action, or the court shall make such other order as it deems proper for the protection of any person under disability.

8. W.Va.Code 56–4–10 (1923) also provides that if the guardian ad litem renders substantial service to the estate of the infant, reasonable compensation and actual costs may be awarded out of the estate. "When, in any case, the court or judge is satisfied that the guardian ad litem has rendered *substantial service* to the estate of an infant, or insane defendant, it may *allow him reasonable compensation* therefor, and his actual expenses, if any, to be paid out of the estate of such defendant. (Emphasis added.)"

9. Because of the paternity aspects of this case, this Court questions whether a contingency fee was proper at all, since a simple blood test is generally dispositive of the issue. However, since the blood tests here were not totally determinative of paternity in this case as a result of problems with the chain of custody, we do not decide this issue at this time. Nevertheless, we disfavor contingency fees in paternity actions and note that some jurisdictions have determined that contingency fees are inappropriate in paternity actions because the plaintiff is seeking to establish a familial relationship. *See Mason v. Reiter*, 564 So.2d 142, 146 (Fla.App.1990) (relying on Rules Regulating Florida Bar 4–1.5(F)(3)(a), prohibiting contingency fees in family law proceedings, the court held that "[a] paternity action determines whether a familial relationship exists and is, therefore, a domestic relations proceeding"); *Davis v. Taylor*, 81 N.C.App. 42, 344 S.E.2d 19, 23, *review denied*, 318 N.C. 414, 349 S.E.2d 593 (1986) (holding that contingency fees are not available in paternity cases because child support recovery is "designed to provide support for a minor over a period of years"); *see also* Wis.Stat.Ann.Sup. Ct.R. 20:1.5 (1995) (providing that attorney shall not enter contingent fee arrangement for any action affecting the family, including paternity determination actions).

ed that Mr. Scales's representation had benefitted Miss Ware, we do not find that statement provides a sufficient basis to determine that legal representation was "reasonably necessary" to protect Miss Ware's interests. On remand, the circuit court should determine if Mr. Scales' representation was "reasonably necessary" to protect Miss Ware's interests. If the circuit court finds under the circumstances that the representation was not reasonably necessary, no attorney's fees need to be awarded.

■ If the representation is found to be "reasonably necessary," generally, the circuit court would then proceed to examine the contract for legal services to determine if the contract was fair and reasonable at the time it was entered and if the fees sought were "reasonable" for the legal services needed and performed. In this case, provided the circuit court has determined that Mr. Scales' legal services were reasonably necessary to protect Miss Ware's interests, the circuit court, because of Mr. Scales' dismissal, needs only to determine if the contract, without considering the contingent fee formula, was fair and reasonable when it was entered. The circuit court does not need to determine if this contingent fee formula was "fair and reasonable" and if the fee was "reasonable;" rather, because of Mr. Scales' dismissal, any award of fees must be based on *quantum meruit* theory.[10] *See infra* section IV for a discussion not only of why *quantum meruit* is the only theory of recovery possible in this case, but also what factors are to be utilized in determining what constitutes a reasonable attorney fee.

## IV.

## ATTORNEY'S FEES

The final issue concerns the proper amount of attorney's fees in this matter. Mr. Scales seeks $12,377.86 in attorney's fees plus $301 in non-reimbursed costs. Ms. Statler disputes the reasonableness of the amount of legal fees requested and during oral argument, maintained that Mr. Scales continued to litigate the matter after she requested him to delay based on information she received during her meeting with the decedent's family. In oral argument, Ms. Statler stated that she is willing to pay some attorney's fees and indicated the amount previously discussed with Mr. Scales was $2,400 based on 24 hours of service up until she requested he delay the litigation. Mr. Scales, in a letter from his counsel to this Court dated October 18, 1995, disputes that he "had informed her that a sum had been agreed upon in the amount of two thousand four hundred ($2,400.00) for attorney's fees."

First, we note that Mr. Scales requests that he receive the benefit of the contingent fee agreement even though his representation was terminated before a successful completion of the suit.[11] Basically, Mr. Scales seeks $9,737.86 for the eight and four tenths (8.4) hours of service he provided before the estate's letter of March 18, 1991 acknowledging Miss Ware as the decedent's daugh-

10. While we conclude that based upon the fact that Mr. Scales was dismissed as the attorney of record and therefore, attorney's fees may only be awarded on a *quantum meruit* basis, we note that some jurisdictions have determined that neither a minor nor the reviewing court is bound by a fee agreement that the minor has entered into. *See Sunnyland Contracting Co. v. Davis*, 221 Miss. 744, 75 So.2d 638 (1954); *Scolavino v. State*, 190 Misc. 548, 74 N.Y.S.2d 573 (N.Y.Ct.Cl. 1947). However, these courts were not willing to deprive the attorneys of their fees where they have provided valuable services to the minor, instead awarding reasonable attorneys' fees. *See id.*

Upon remand, the determination of reasonable attorney's fees should not result in an award to Mr. Scales of a fee greater than he would be contractually entitled to receive under the contingent fee agreement. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). We are not establishing a *per se* rule that a contingent-fee contract imposes an automatic ceiling on an award of attorney's fees. Because we have adopted the factors expressed in *Johnson* and Rule 1.5(a) of the *Rules of Professional Conduct* (*see supra* section IV), this question will be addressed on a case by case basis.

11. See section III discussing the predicates necessary for a court to imply a contract for legal services with an infant and the additional requirements that the contract be fair and reasonable at the time it was entered and that the fee contract be fair in relation to the services needed and performed.

ter [12] and $110 per hour for the remaining 24 hours of service he provided.[13]

■ We have long held that in cases where an attorney is discharged, without fault on his or her part, the attorney is not entitled, as a matter of law, to recover the whole contingent fee, but the attorney may recover the reasonable value of his or her services. *See Polsley & Son v. Anderson,* 7 W.Va. 202 (1874). The Syllabus of *Clayton v. Martin,* 108 W.Va. 571, 151 S.E. 855 (1930) states:

> Where an attorney has been discharged, without fault on his part, from further services in a suit just begun by him under a contract for payment contingent upon successful prosecution of the suit, his measure of damages is not the contingent fee agreed upon, but the value of his services rendered; and in the absence of evidence of the reasonable value of such services, no recovery can be had.

*See Metzner v. Metzner,* 191 W.Va. 378, 386, 446 S.E.2d 165, 173 (1994); *May v. Seibert,* 164 W.Va. 673, 681, 264 S.E.2d 643, 647 .(1980). Recently in *Hardman v. Snyder,* 183 W.Va. 34, 35, 393 S.E.2d 672, 673 (1990) (*per curiam* ), we reviewed holdings from other jurisdictions, which review led us to conclude that "[t]he rule enunciated in *Clayton* is also the general rule elsewhere."

■ The rationale for this principle is based on the "special relationship of trust and confidence between attorney and client [and therefore] the client may terminate the relationship at any time, with or without cause." *Covington v. Rhodes,* 38 N.C.App. 61, 65, 247 S.E.2d 305, 308 (1978), *review denied,* 296 N.C. 410, 251 S.E.2d 468 (1979). Because Ms. Statler terminated Mr. Scales' services, he can not recover based' on the contingency fee but can recover in *quantum meruit.*

In this case, Mr. Scales has submitted an itemized list of the date, time and services he performed. In *Clayton v. Martin,* 108 W.Va. at 575, 151 S.E. at 857, we said: "It is axiomatic that in a suit on *quantum meruit* for services the value of the services must be shown and not left to conjecture. *Stafford v. Bishop,* 98 W.Va. 625 [127 S.E. 501 (1925) ]." *See Hardman v. Snyder, supra* for a discussion of a case where detailed information on the legal services was not provided.

■ When an itemized list is provided, the list must be examined to determine if the fee is reasonable. Rule 1.5(a) (1990) of the *Rules of Professional Conduct* begins by stating that "[a] lawyer's fee services shall be reasonable" and the rule provides consideration of the following factors to determine the reasonableness of a fee:

(1) the time and labor required, the novelty and difficulty of the questions involved, and skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

---

12. The March 18, 1991 letter from the estate's lawyer to Mr. Scales began by saying "the Executrix of the estate of Richard Ware, namely Vel Anne Dodson, will acknowledge the paternity of Richard Ware for the child of Linda Statler." The March 18, 1991 letter contained a blank line to indicate the amount of an initial distribution. The estate and Mr. Scales agree that $28,121.57 was the amount of the initial distribution to Ms. Statler and it was made at a later date. The letter also indicated the resolution of the paternity issue depended upon the blood tests.

13. According to the itemized list of services provided by Mr. Scales, he spent a total of 31.75 hours on this case. In his brief he maintains that 24 hours of service were provided after the March 18, 1991 letter. The itemized list indicates that 8.4 hours of service were provided through March 16, 1991.

(8) whether the fee is fixed or contingent.[14]

In *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 195, 342 S.E.2d 156, 161 (1986), we found that "[t]he reasonableness of attorney's fees is generally based on broader factors such as those listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)." We also noted that the *Johnson* factors were similar to the factors summarized in Syl. pt. 3, *Stafford v. Bishop*, 98 W.Va. 625, 127 S.E. 501 (1925):

> In determining the value of an attorney's services upon a quantum meruit, a jury may take into consideration evidence as to the attorney's ability, skill, experience, diligence, and standing in his profession, as well as the nature and extent of the services performed, the difficulties encountered, the responsibility assumed, the amount involved, the physical and mental labor expended, the results achieved, their benefit to the client, and the usual and customary charges for like services in the same vicinity.

Thus the determination of the reasonableness of attorney's fees depends upon the consideration of various factors. Syl. pt. 4, *Aetna v. Pitrolo, supra* states:

> Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the

professional relationship with the client; and (12) awards in similar cases.

*Accord State ex rel. W.Va. Highlands Conservancy, Inc. v. W.Va. Div. of Environmental Protection*, 193 W.Va. 650, 458 S.E.2d 88, 93 (1995); *Daly v. Hill*, 790 F.2d 1071, 1075 n. 2 (4th Cir.1986) (The consideration of these factors for evaluating attorney's fees "was endorsed by Congress when it enacted [42 U.S.C.] § 1988" and "approved of by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 434 n. 9, 103 S.Ct. 1933, 1940 n. 9, 76 L.Ed.2d 40[, 51 n. 9] (1983)."); *Ball v. Wills*, 190 W.Va. 517, 525, 438 S.E.2d 860, 868 (1993); *Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 81, 380 S.E.2d 238, 248 (1989). *See also Farrar v. Hobby*, 506 U.S. 103, 113–14, 113 S.Ct. 566, 574–75, 121 L.Ed.2d 494, 505 (1992) (compare total relief actually achieved by the plaintiff with relief sought to determine "the degree of success" for setting attorney's fees).

The United States Supreme Court in *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891, 900 (1984), considered the *Johnson* factors and required reasonable fees "to be calculated according to the prevailing market rates in the relevant community regardless of whether plaintiff is represented by private or non-profit counsel." According to *Blum*, the determination of "an appropriate 'market rate' for the services of a lawyer is inherently difficult" and recommended consideration include the types of services performed and the rates charged in similar circumstances. 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11, 79 L.Ed.2d at 900 n. 11.

### V.

### CONCLUSION

Because a circuit court can imply a contract for legal services with an infant if the legal services are determined to be reasonably necessary to protect the infant's interest, we remand this case to the circuit court for that determination. If the circuit court determines that Mr. Scales' legal services were reasonably necessary to protect Miss

---

**14.** *See supra* pp. 504–506 discussing why the contingent fee agreement is not appropriate in this case and recovery is limited to *quantum meruit*.

Ware's interests, then the circuit court should proceed to consider, if, except for the contingent fee formula, the contract was fair and reasonable at the time it was entered and, if both predicates are present, the reasonableness of the requested legal fees under the factors outlined in Rule 1.5 of the *Rules of Professional Conduct* and Syl. pt. 4 of *Aetna v. Pitrolo.* Given Mr. Scales' dismissal, the circuit court need not consider the contingency fee provision. These determinations indicate the need for a hearing on, first, the reasonable necessity of the legal representation, second, if appropriate, reasonableness of the contract when it was entered, and, third, if appropriate, the reasonableness of the requested attorney's fees followed by the preparation of findings of fact and conclusions of law as predicates to the ultimate decision as to the amount of fees to be paid by Ms. Statler as guardian of Miss Ware.

Accordingly, we reverse the Circuit Court of Jefferson County's decision denying the payment of non-reimbursed costs and attorney's fees and remand for a hearing consistent with the above stated principles.

Reversed and remanded.

Retired Justice MILLER sitting by temporary assignment.

Justice ALBRIGHT did not participate.